### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS S. MANFRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  08 C 1281 |
| v. | ) | |
| | ) | Judge Matthew J. Kennelly |
| JEROME MAY, WILLIAM MAY, | ) | Magistrate Judge |
| DAVID MAY, and R&M FREIGHT, | ) | Michael T. Mason |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES

NOW COME Defendants, JEROME MAY, WILLIAM MAY and DAVID MAY (collectively, the "May Brothers"), by and through their attorneys, LOWIS & GELLEN, LLP, and for their Answer and Affirmative Defenses to Plaintiff's Complaint, state as follows:

1.      Mr. Manfre and each of the May brothers own twenty-five percent of R&M.  Mr. Manfre brings this lawsuit against the May Brothers to stop them, acting collectively as the majority bloc of R&M shareholders, from engaging in oppressive conduct against him as a minority shareholder, from engaging in oppressive conduct against him as a minority shareholder of R&M and from wasting the corporate assets of R&M.  Among other relief, Mr. Manfre seeks a buyout of his shares in R&M for fair value.  Mr. Manfre also seeks damages from the May Brothers resulting from their breaches of their fiduciary duties to him as fellow shareholders in a closely held corporation.  Finally, Mr. Manfre brings suit to vindicate his right to examine corporate records of R&M that the May Brothers and the corporation have not provided him.

**ANSWER:**    The May Brothers admit the first sentence of paragraph 1 and that Plaintiff purports to have brought claims seeking relief for oppressive conduct, waste and breach of fiduciary duty.    The May Brothers further state that the remaining allegations are legal conclusions to be made by this Court, but to the extent that an answer is required, the May Brothers deny the remaining allegations of paragraph 1.

## PARTIES

2.      Plaintiff Thomas S. Manfre is a citizen of the state of Florida.  At all times relevant herein, Mr. Manfre has owned twenty-five percent of the issued shares of R&M.  Until on or about January 9, 2008, when he was unlawfully removed from his position by the May Brothers, Mr. Manfre was a director of R&M and Chairman of its Board of Directors.

**ANSWER:**    The May Brothers lack sufficient knowledge regarding Plaintiff's citizenship and therefore neither admit nor deny the first sentence of paragraph 2.  The May Brothers admit the second sentence of paragraph 2 and that Plaintiff served as a director and Chairman of the Board of Directors of R&M until January 9, 2008.  Answering further, the May Brothers state that Plaintiff's allegation concerning the nature of his removal is a legal conclusion to be made by this Court, and to the extent that an answer is required, deny that allegation.

3.      Defendant Jerome May is a citizen of the state of Illinois.  Since approximately late 2004, Jerome May has owned twenty-five percent of the issued shares of R&M.  Jerome May is the President of R&M and is a director of the company.

**ANSWER:**    Admitted.

4.      Defendant William May is a citizen of the state of Illinois.  Since approximately late 2004, William May has owned twenty-five percent of the issued shares of R&M.  William May is a Vice-President of R&M and is a director of the company.

**ANSWER:**    Admitted.

5.      Defendant David May is a citizen of the state of Illinois.  Since approximately late 2004, David May has owned twenty-five percent of the issued shares of R&M.  David May is a Vice President of R&M and is a director of the company.  Jerome May, William May, and David May are brothers.

**ANSWER:**    Admitted.

6.      Defendant R&M is an Illinois corporation whit its principal place of business in Bensenville, Illinois.  R&M does business as R&M Trucking Company, and specializes in the air and ocean freight forwarding industry as well as serving as a common carrier providing daily direct local cartage service.  R&M does not now have, nor has it ever had, shares listed on a national securities exchange or regularly traded in a market maintained by one or more members of a national or affiliated securities association.

**ANSWER:**      Admitted.

## JURISDICTION AND VENUE

7.      Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a), because (1) plaintiff Manfre is a citizen of the state of Florida where each of the May Brothers and R&M is a citizen of the state of Illinois, and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs.

**ANSWER:**      Assuming only that Plaintiff is a citizen of the state of Florida and not Illinois, the

May Brothers admit allegations of paragraph 7.  Answering further, the May Brothers state that

the allegation concerning the amount in controversy is a legal conclusion to be made by this

Court, and to the extent an answer is required, denies that allegation.

8.      Venue is proper in the Northern District of Illinois, pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the claim occurred in the Northern District of Illinois.

**ANSWER:**      Assuming the Court has jurisdiction over this matter, the May Brothers admit that

venue is proper in the Northern District of Illinois, but deny Plaintiff's allegations to the extent

that any events giving rise to a right of recovery on his part occurred in this jurisdiction.

## BACKGROUND FACTS

**A.      Founding Of R&M Trucking Co.**

9.      Robert May founded R&M Trucking Company in 1976.

**ANSWER:**      Admitted.

10.    In 1999, Robert May was the sole owner of R&M Trucking Company and its President.  Robert May is the father of the May Brothers.  At this point, and as they had for a number of years, the May Brothers worked at R&M Trucking Company, and each was then earning approximately $65,000 in annual salary.

**ANSWER:**    Denied.  Answering further, the May Brothers state that Robert May had gifted

shares of his stock to each of his five (5) children and thus was not the sole owner of R&M

Trucking Co.  The May Brothers further state that David May, William May and Jerome May

each had been earning $100,000 in annual salary since the late 1990s, and that each of the them

had been gifted stock in lieu of higher compensation by Robert May for purposes of increasing

R&M Trucking Company's liquidity in the early days of its operation.


**B.    R&M Trucking Company Sold To Towne Air.**

11.    In 1999, when R&M Trucking Company had approximately $12 million in annual sales, Robert May became interested in selling R&M Trucking Company.  To pursue this Robert May asked his friend and partner in business ventures, Mr. Manfre, for assistance.

**ANSWER:**    The May Brothers state that they are without knowledge or information sufficient

to form a belief as the allegations of paragraph 11, and therefore, deny those allegations.


12.    With Mr. Manfre's guidance, Robert May ultimately agreed to sell the assets of R&M Trucking Company to Towne Air Freight LLC and Town Air Freight, Inc. (collectively "Towne Air"), a portfolio investment of William Blair Capital Partners V, L.P.  The sale closed in October of 1999, with Towne Air paying Robert May approximately $12 million in total consideration for the assets of R&M Trucking Company.

**ANSWER:**    The May Brothers state that they are without knowledge or information sufficient

to form a belief as the allegations concerning Plaintiff's involvement in the 1999 sale of R&M

Trucking Company, and therefore, deny those allegations.  Answering further, the May Brothers

state that October 1999 sale of R&M Trucking assets closed for $7.8 million in cash as well as

4

$1.5 million in earn-outs for the May Brothers.  The May Brothers admit the remaining allegations of paragraph 12.

### C.    The Establishment of R&M by Mr. Manfre, Robert May, and the May Brothers

13.    In 2003, Mr. Manfre, Robert May and the May Brothers incorporated R&M, which then purchased the assets of Towne Air.  The group paid Towne Air just over $2,500,000 in cash and debt forgiveness for the assets of the business.

**ANSWER:**    Admitted.  Answering further, the May Brothers state that the purchase price was comprised of approximately $1.1 million in cash, and the remainder consisted of outstanding accounts receivable, credits and various assets.

14.    To fund the acquisition, Robert May and Mr. Manfre contributed the cash required, and Mr. Manfre arranged for financing for the transaction.  The May Brothers, meanwhile, contributed no cash, instead agreeing to forgive just over $500,000 that Towne Air owed them for an unpaid earn-out resulting from Towne Air's previous purchase of R&M's assets from their father in 1999.

**ANSWER:**    Denied.  Answering further, the May Brothers state that they contributed cash in an amount proportional to their projected 50 percent ownership of the newly incorporated R&M, that they did not forgive any debt previously owed by Towne Air, and that they received approximately $600,000 in earn-outs.

15.    Following the purchase of R&M's assets in 2003, Robert May and Mr. Manfre each owned 250 shares of R&M while the May Brothers each owned 133 $^{1}/_{3}$ shares.

**ANSWER:**    The May Brothers admit the allegations of paragraph 15 with respect to the number of shares owned by Robert May and Plaintiff.  Answering further, the May Brothers each owned 166.666 shares in the new corporation.

16.    Each of the five owners of R&M were elected directors of R&M following the acquisition.  The R&M Board of Directors also appointed an Executive Committee of R&M, which consisted of each of the directors.

**ANSWER:**    Admitted.


17.    After the 2003 acquisition of R&M, the May Brothers were hired in management positions at R&M, at annual salaries of approximately $100,000.  Mr. Manfre, Robert May, and Margaret May, Robert May's wife, each received an annual consulting fee of $25,000 per year.

**ANSWER:**    The May Brothers admit the allegations of the first sentence of paragraph 17. Answering further, the May Brothers assert that Margaret May was never a consultant to R&M and only administered R&M's accounts payable and employee payroll.  The May Brothers further state that, while he had helped arrange financing for the acquisition of R&M's assets, Plaintiff was not active in R&M's day-to-day operations.  Answering further, the May Brothers deny that R&M paid Plaintiff a consulting fee, but rather assert that Robert May and Plaintiff agreed that Plaintiff would receive an annual payment for his participation in R&M's operation and governance, and that Plaintiff insisted that the amount be paid to Specials Transportation, Inc., a trucking company owned and managed by Plaintiff.  (See paragraph 60 and the May Brothers' answer thereto, *infra*.)


18.    As a consultant, Mr. Manfre has devoted a substantial amount of time to R&M, averaging approximately forty to sixty hours per week for approximately six months before the 2003 acquisition closed and approximately twenty hours per week since that time.  Among other things, Mr. Manfre kept the corporate records and minutes of R&M, arranged banking relationships on terms favorable to R&M and its shareholders, and acquired the services of investment bankers when the shareholders were considering selling the company.

**ANSWER:**    The May Brothers admit the allegations of paragraph 18 concerning Plaintiff's arrangement of banking relationships on R&M's behalf and further admit that Plaintiff kept the

minutes for R&M's executive committee.  The May Brothers deny the remaining allegations of paragraph 18.

19.    It was reasonable expectation of Mr. Manfre and the other shareholders that the corporation, if it were profitable, would periodically pay dividends to each of the shareholders on a pro-rata basis.  From the 2003 acquisition of R&M until late 2006, this was the practice adopted by R&M's Board of Directors.

**ANSWER:**    The May Brothers are without sufficient knowledge or information as to what Mr. Manfre's reasonable expectations were, and therefore, to the extent that an answer is required, deny the allegations of the first sentence of paragraph 19.  The May Brothers admit the remaining allegations of paragraph 19.

### D.    Robert May Transfers His R&M Shares To The May Brothers.

20.    In approximately late 2004, Robert May decided he no longer wanted to be involved in the company's management or ownership and decided to transfer his stake in the company to the May Brothers.  As a result, each of the May Brothers received one-third of Robert May's 250 shares, bringing their ownership stakes in R&M to 250 shares each.

**ANSWER:**    Admitted.  Answering further, the May Brothers state that they paid $500,000 for Robert May's shares in R&M.

21.    In June of 2005, the R&M Executive Committee voted to give the May Brothers significant raises, raising their annual salaries by fifty percent to approximately $150,000.  At the same time, Mr. Manfre proposed that the consulting fees for Robert May, Margaret May and himself also be increased by fifty percent.  The May Brothers disagreed with this proposal and so the consulting fees were not adjusted.

**ANSWER:**    The May Brothers admit the first sentence of paragraph 21.  The May Brothers again deny that Margaret May was ever a consultant for R&M and that she ever received fees for serving in a consulting capacity.  The May Brothers admit the remaining allegations of paragraph

21. Answering further, the May Brothers assert that they refused Plaintiff's request to adjust his consulting fee due to their shared belief that he failed to fulfill his duties as a consultant.

### E.    R&M's Shareholders Explore The Sale of the Company.

22.    In late 2005, R&M agreed to work with an investment banker to explore the possibility of selling the company. In February 2006, R&M's work with an investment banker produced an offer in which a prospective buyer proposed to acquire R&M in exchange for approximately $28 million. In November 2006, the prospective buyer withdrew the offer. Additionally, the prospective buyer decided not to make another offer when it became clear that the May Brothers were not interested in any lower offers.

**ANSWER:**    The May Brothers admit the allegations of the first sentence of paragraph 22. Answering further, the May Brothers assert that both they and Plaintiff were not interested in any offers consisting of less than $20 million in cash for the purchase price, and that they had all agreed not to pursue a sale of R&M that would fail to net each of them $5 million, an amount they believed would fairly compensate them for their contributions to the corporation and allow them to retire from the industry. Answering further, the May Brothers assert that the referred prospective buyer did not offer $28 million cash as the purchase price, but rather less than $20 million cash in addition to debt assumption, credits and various other assets.

23.    A few months later, in February 2007 R&M resumed searching for potential buyers after the May Brothers agreed to do so. In May 2007, the same investment banker found another potential buyer. This time, the potential buyer's offer totaled $28 million, with $22 million being in cash and the remaining $6 million in the form of assumed debt and excess working capital. In September 2007, after R&M did not meet its EBITDA projections, the second prospective buyer withdrew its offer. Because the May Brothers previously indicated in 2006 that, based on their view of R&M's value, they were seeking an offer of at least $20 million in cash in exchange for the sale of the entire company, R&M's investment banker did not ask this prospective buyer for a new offer.

**ANSWER:**    The May Brothers admit the allegations in the first sentence of paragraph 23. Answering further, the May Brothers repeat and reallege their answer to paragraph 22, and further assert that R&M failed to meet its EBITDA projections due to inclusion of improper assets and otherwise faulty projections promulgated by the investment banker engaged by Plaintiff.

### F.    Dispute Over 2006 Bonus And Dividends.

24.    On November 15, 2006, the May Brothers proposed, for the first time since the 2003 acquisition and in the form of a motion at a Board of Director's meeting that R&M pay them bonuses.  Before this time, the R&M Board had discussed both a bonus or incentive plan for management and a shareholder agreement at multiple prior meetings.  These discussions, however, never yielded a final version of either.  Indeed, with regard to the bonus or incentive plan, when the idea was first discussed, Robert May rejected it, arguing that the company needed to be in a stronger and more stable financial position before such a plan could be considered.

**ANSWER:**    The May Brothers deny that Robert May rejected their bonus proposal. Answering further, the May Brothers assert that the referenced meeting was a meeting of the Executive Committee, not the Board of Directors, and that during prior discussions of bonus and incentive plans, Plaintiff insisted on repeatedly tabling any such measures and refused to pass any without a unanimous vote.

25.    Notwithstanding the Board's inability to enact a bonus or incentive plan and notwithstanding the fact that there was no agenda item concerning it, at the end of the November 15, 2006 meeting of R&M's Executive Committee, Jerome May verbally proposed that the May Brothers each receive a $225,000 bonus for 2006.  Additionally, the proposal called for each of the shareholders—the May Brothers plus Mr. Manfre—to get a $75,000 dividend.

**ANSWER:**    Admitted.

26.    In response to this verbal proposal, Mr. Manfre wrote to Jerome May on November 22, 2006, seeking both information on the reasons for it and proposing alternate ways

of proceeding.   Mr. Manfre inquired of Jerome May what had changed since the Board unanimously agreed to put the proposed shareholder, buy/sell, and bonus agreements on hold such that Jerome May thought it appropriate to propose the bonuses and dividends for 2006.  Mr. Manfre further noted that by paying the May Brothers bonuses totaling $675,000, Jerome May's proposal resulted in significant tax liabilities.  To avoid these liabilities, but still provide the May Brothers with the same net proceeds, Mr. Manfre proposed adjusting the distribution to give each shareholder a $211,000 dividend.   The result would have been that the May Brothers would receive the same net benefit, while Mr. Manfre would have received a greater benefit and the Company would have expended twenty percent less cash.

**ANSWER:**    The May Brothers admit the allegations of paragraph 26 concerning Plaintiff's correspondence and written proposals to Jerome May.   The May Brothers deny the allegations concerning the outcomes of Plaintiff's proposals and the resulting effects on R&M's liabilities and liquidity.

27.    As an alternative, Mr. Manfre proposed that R&M use the funds that otherwise would be used to cover the costs of the bonuses and dividends to invest in R&M's capabilities by commencing a number of searches for additional qualified professional staff.

**ANSWER:**    Admitted.

28.    Neither of the proposals put forth by Mr. Manfre were acceptable to the May Brothers.   They did, though, agree to schedule a special meeting of the R&M Executive Committee for November 29, 2006 to discuss the issues.

**ANSWER:**    Admitted.

29.    At the special meeting, the R&M Executive Committee discussed three options for how R&M should proceed:  Jerome May's bonus/dividend proposal, Mr. Manfre's dividend proposal, and Mr. Manfre's proposal to hire additional professional staff.  After the discussion, the Executive Committee voted 4-1 to approve Jerome May's bonus/dividend proposal, with the May Brothers and Robert May voting in support and Mr. Manfre voting against it.  Explaining his vote against Jerome May's bonus/dividend proposal and his preference for hiring additional professional staff to better manage R&M's hoped-for growth, Mr. Manfre noted that the distribution would leave the company with very little cash reserves, meaning the company would be forced to borrow should its business slow down.

**ANSWER:**    The May Brothers deny the allegation that R&M would have been forced to borrow money had their bonus/dividend proposal been approved.  The May Brothers admit the remaining allegations of paragraph 29.

30.    Following the approval of Jerome May's bonus/dividend proposal, R&M paid the May Brothers bonuses of $225,000 and dividends of $75,000 each while also paying Mr. Manfre a dividend of $75,000.

**ANSWER:**    Admitted.

### G.    Robert May Resigns From R&M.

31.    At the March 21, 2007 meeting of R&M's Executive Committee, Robert May informed the committee that he was now resigning his positions as President, CEO, and a Director of R&M.

**ANSWER:**    Admitted.

32.    In notifying the committee of his decision, Robert May proposed that Jerome May be named as his successor.  This recommendation was adopted and Jerome May then became the President and CEO of R&M.

**ANSWER:**    Admitted.

### H.    Dispute Over 2007 Bonuses.

33.    In November 2007, the bonus issue arose once more.  This time, however, the May Brothers did not bother with the formality of a Board meeting.  Instead, in a November 26, 2007 e-mail, David May—who was neither President of the company nor Chairman of the Board—wrote to his brothers and Mr. Manfre to inform them that the November and December Board meetings were being cancelled.  If there were any issues that needed to be discussed or voted on, David May instructed that this occur by e-mail.

**ANSWER:**    The May Brothers deny the allegations of paragraph of 33 to they extent they implicate that the e-mail exchange through which the Board meeting was cancelled was improper. The May Brothers admit the remaining allegations of paragraph 33.

34.    Having decided that issues be discussed and voted on by e-mail, David May then went on to propose that each of the May Brothers once again be given an annual bonus of $225,000 for 2007, requesting that all directors vote on the issue.

**ANSWER:**    Admitted.

35.    A few days later, on November 29, 2007, both Jerome May and William May sent e-mails addressed to each of the other directors expressing their agreement with David May's proposal that each of the May Brothers receive the proposed $225,000 bonuses.

**ANSWER:**    Admitted.

36.    Shortly after that, on or around November 30, 2007, Mr. Manfre wrote to Jerome May to express his opposition to the bonus proposal.  At the same time, Mr. Manfre stated his belief that the company needed to build up its reserves to prepare for potential downturns in the economy or its business.  At the same time, Mr. Manfre noted that the company's results for 2007 did not support the bonuses, given that it had missed its budget by over $3,500,000 in revenue and $1,000,000 in net income through October, notwithstanding numerous adjustments to that budget throughout the year.

**ANSWER:**    The May Brothers admit that Plaintiff wrote to Jerome May on or about the date specified, but deny the remaining allegations of paragraph 36.

37.    In expressing his opposition to the bonus proposal, Mr. Manfre also noted that it had not been presented in the required form, coming, as it did, simply in an e-mail with no supporting documentation.

**ANSWER:**    The May Brothers admit the fact that Plaintiff expressed his concerns but deny that the form of the alleged bonus proposal was in any way improper.

38.    Finally, Mr. Manfre again noted that if the May Brothers were intent on distributing R&M funds to themselves, as they did in 2006 and as they appeared intent on doing again in 2007, there were ways to do it that would reduce the tax implications of that distribution to each of the shareholders, thereby allowing R&M to provide the same net income to the May Brothers without expending as much of its available cash to do so.

**ANSWER:**    Admitted.

39.    David May wrote by e-mail on or around December 7, 2007 to inform the members of the R&M Board of Directors that the bonus proposal had passed by a vote of 3 to 1. With regard to other issues raised by Mr. Manfre's letter, David May indicated that they could be discussed at the next meeting.

**ANSWER:**    Admitted.

40.    Under R&M's By-Laws, R&M's Board of Directors is required to establish reasonable compensation of directors for services to the corporation as directors, officers, or otherwise.  On information and belief, the May Brothers have caused R&M to pay bonuses for 2007 to each of themselves in the amount of $225,000 apiece.  The bonuses the May Brothers took for themselves were not properly authorized and were awarded in violation of Section 8.45 of the Illinois Business Corporation Act, 805 ILCS 5/8.45, because the bonuses were not approved at a meeting of R&M's Board of Directors, nor was there a consent in writing and signed by all of the members of R&M's Board of Directors setting forth that these bonuses should be awarded to the May Brothers.

**ANSWER:**    The May Brothers admit the allegations of paragraph 40 concerning R&M's By-Laws and the awarding of bonuses for 2007.  The May Brothers deny the remaining allegations of paragraph 40.

### I.    Mr. Manfre Seeks A Resolution Of The Shareholder Disputes.

41.    On December 11, 2007, Mr. Manfre wrote to Jerome May to explain his position regarding the recent actions by the R&M Board, which was dominated by the May Brothers.  In this communication, Mr. Manfre proposed that if the May Brothers wished to continue to do as they pleased with R&M that they buy out his shares of the company at fair value rather than continuing their course of shareholder oppression and illegal domination.

**ANSWER:**    The May Brothers admit that Plaintiff wrote to Jerome May on or about December 11, 2007, but deny the allegations of paragraph 41 concerning their domination of the R&M Board.

### J.    The May Brothers Respond With Further Shareholder Oppression.

42.    The May Brothers chose to ignore Mr. Manfre's requests. Instead, they commenced a series of actions that only increased their oppression and domination of Mr. Manfre as a minority shareholder in R&M.

**ANSWER:**    Denied.  Answering further, the May Brothers state that Plaintiff affirmatively chose not to participate in any R&M director and/or shareholder meetings.

43.    This series began with a December 14, 2007 letter from Jerome May to Mr. Manfre, purportedly on behalf of R&M's Board of Directors.  The letter, however, was sent without consulting Mr. Manfre, who at that time remained Chairman of the R&M Board of Directors.  In the letter, Jerome May ultimately indicated that R&M's Board wished to begin a dialogue to establish the price for Mr. Manfre's shares and a way for R&M to pay that price to him.

**ANSWER:**    The May Brothers admit that Jerome May sent a letter to Plaintiff on or about December 17, 2007, as well as the general description of the letter's contents.  The May Brothers deny that such a letter was in any way part of a series of actions to dominate the Board and/or oppress Plaintiff, and that its issuance was in any way improper.

44.    At the same time he sent this letter, however, Jerome May also issued a notice scheduling a special meeting of the R&M Board of Directors for December 26, 2007.  In issuing the notice of the special meeting, Jerome May failed to identify the purpose of the meeting or to provide an agenda for the meeting.

**ANSWER:**    The May Brothers admit the allegations of paragraph 44 concerning Jerome

May's having issued notice of a special meeting, but deny any implication that the notice was

improper and/or deficient.


45.    On December 17, 2007, Mr. Manfre wrote to Jerome May, noting that he may not be able to attend the December 26, 2007 special meeting.  In the e-mail he sent to Jerome May, Mr. Manfre also noted that the notice for the special meeting failed to identify the issue that was so urgent that it could not wait for the January Board meeting.

**ANSWER:**    Admitted.    Answering further, the May Brothers state that they attempted to

accommodate Plaintiff and arrange to have him attend the meeting by conference call.


46.    Responding to Jerome May's December 14, 2007 letter, Mr. Manfre wrote to Jerome May on December 19, 2007 to agree with his suggestion that R&M's accountant might be able to assist the shareholders and express his hope that this work would be started as soon as possible.  Additionally, having not yet heard back from Jerome May as to the purpose of the special meeting, Mr. Manfre again asked Jerome May to identify its purpose so that he could determine if he would be able to attend.

**ANSWER:**    The May Brothers admit the allegations of paragraph 46, but deny any implication

that the notice of the special meeting was improper and/or deficient.


47.    Once again, Mr. Manfre heard nothing in response to his inquiry regarding the special meeting.  Accordingly, on the morning of the meeting, Mr. Manfre wrote to Jerome May once more, reminding him that, as he had previously told him, he was unable to attend the meeting in person.  Regardless of whether he would be able to attend, Mr. Manfre requested a copy of the agenda for the meeting, as well as a list of any invited guests.

**ANSWER:**    The May Brothers lack sufficient knowledge or information to form a belief as to

what Plaintiff "heard" regarding the special meeting as alleged in the first sentence of paragraph

47, and to the extent that an answer is required, deny that allegation.  The May Brothers admit

the remaining allegations of paragraph 47, but deny any implication that the notice of the special

meeting was improper and/or deficient.


48.    Jerome May finally responded to this latest inquiry regarding the purpose of the special meeting, informing Mr. Manfre that the meeting was to discuss Mr. Manfre's buy-out demand and make any necessary motions that might follow from that discussion.

**ANSWER:**    The May Brothers admit the allegations of paragraph 48, but deny any implication

that they were dilatory in apprising Plaintiff of the purpose of the special meeting.


49.    On information and belief, the special meeting of the R&M Board of Directors went forward on December 26, 2007. Mr. Manfre was unable to attend. No agenda or other materials from the meeting were ever provided to him, including the minutes, if any, from the meeting.

**ANSWER:**    The May Brothers admit the allegations of paragraph 49 concerning the

occurrence of the Board meeting, but deny any implication that the notice of the special meeting

to Plaintiff was improper and/or deficient or that the meeting was somehow conducted

improperly. Answering further, the May Brothers lack sufficient knowledge or information to

form a belief as to whether Plaintiff was unable to attend, and to the extent that an answer is

required, deny that allegation.


50.    On December 28, 2007, Jerome May, in his capacity as president of R&M, issued two notices of shareholder meetings. The first notice called for a special meeting of the R&M shareholders on January 8, 2008. The notice for this special shareholders' meeting stated that the sole purpose of the meeting was to consider two amendments to the corporation's Articles of Incorporation. The first of these two amendments was to increase the shares authorized to issue from its current 100,000 shares, of which 1,000 had been issued, to 5 million shares. The second amendment proposed to eliminate cumulative voting of shares. The notice closed by stating that if a shareholder—of which there were four, the May Brothers and Mr. Manfre—could not attend in person, he could either participate by phone or vote by proxy.

**ANSWER:**    Admitted.

51.     The second notice set by the annual shareholder meeting for January 9, 2008, the day after the special shareholders' meeting.  Like the notice for the special shareholders' meeting, the notice closed by stating that if a shareholder could not attend in person, he could either participate by phone or vote by proxy.

**ANSWER:**     Admitted.

52.     On January 5, 2008, Mr. Manfre wrote to Jerome May alerting him of his decision to vote his shares by proxy for the January 8, 2007 special meeting.  At the same time, Mr. Manfre noted that the agenda for the meeting would need to have a board recommendation and thorough explanation of the need for the proposed amendments.  Because no official proxy form was provided with the notice and because no board recommendations or explanations had yet been provided, Mr. Manfre requested each.

**ANSWER:**     The May Brothers admit the allegations of paragraph 52 concerning Plaintiff's correspondence with Jerome May, but deny any implication that the agenda and/or provision of a proxy form to Plaintiff were improper and/or deficient.  Answering further, the May Brothers assert that Plaintiff's January 5 correspondence was not postmarked until January 7, and that the requisite board recommendations and explanations of the need for the proposed amendments were contained in the minutes of the December 26, 2007, Board meeting.

53.     Returning to the possibility of a resolution of the apparent differences between him and the May Brothers, Mr. Manfre wrote to the May Brothers on January 7, 2008 to inquire what had happened in the three weeks since Mr. Manfre had agreed with Jerome May's proposal that R&M's accountant assist in determining the amount and procedures for the May Brothers to buy out Mr. Manfre's shares.  Noting that since agreeing to this proposal he had taken no further action, he requested an update.

**ANSWER:**     Admitted.

54.     On January 8, 2008, the May Brothers caused R&M's Articles of Incorporation to be amended to eliminate cumulative voting.  Unless they eliminated cumulative voting, the May Brothers would not be able to remove Mr. Manfre from his position as a director of R&M.  On

the same date, the May Brothers also caused R&M's Articles of Incorporation to be amended to increase the authorized number of shares from 100,000 to 5,000,000, thereby threatening to make Mr. Manfre's 250 shares in R&M a minuscule percentage of the total number of shares in R&M.

**ANSWER:**    The May Brothers admit having amended R&M's Articles of Incorporation on the

relevant dates, but deny any implication that doing so was part of or in furtherance of an overall

scheme to remove Plaintiff as a director or generally oppress him or any other minority

shareholder.

55.    In response to Mr. Manfre's January 7 written communication on January 9, 2008, Jerome May claimed that, despite Mr. Manfre's December 14, 2007 e-mail agreeing that R&M's accountant might be able to help and stating that he hoped the work could get started as soon as possible, the May Brothers were unaware that Mr. Manfre had agreed to the suggestion. Claiming that they were only now aware of Mr. Manfre's agreement, Jerome May stated that the May Brothers would start working with R&M's accountant at the next Executive Committee meeting, which would be sometime after William May returned from his upcoming vacation.

**ANSWER:**    Admitted.

56.    In that same e-mail, Jerome May informed Mr. Manfre that because of the buyout issue, the R&M shareholders had changed the members of the Executive Committee to now consist of only the May Brothers. Jerome May also informed Mr. Manfre that he had not been re-elected to the R&M Board of Directors nor was he appointed to any company office. Thus, as of January 9, 2008, the May Brothers had removed Mr. Manfre from all positions with the company, leaving only themselves as officers or directors of the company.

**ANSWER:**    The May Brothers admit having taken the actions alleged in paragraph 56, but

deny the implication that they were in any improper and/or part of an overall scheme to oppress

Plaintiff.

57.    The May Brothers' removal of Mr. Manfre as a director violated Section 8.35(a)(1) of the Illinois Business Corporation Act, 805 ILCS 5/8.35(a)(1), because neither the notice of the special shareholders' meeting of January 8, 2008 nor the notice of the regular

shareholders' meeting of January 9, 2008 provided that one of the items on the agenda of either meeting was the removal of Mr. Manfre as a director of R&M.

**ANSWER:**     Denied.


58.     On January 10, 2008, Jerome May again wrote to Mr. Manfre.  This time, Jerome May informed Mr. Manfre that his January 5, 2008 letter had not been receive [*sic*] until that day.  As a result, Jerome informed Mr. Manfre that his vote was not counted when the special meeting was held on January 8th or when the annual meeting was held on January 9th.

**ANSWER:**     Admitted.


59.     Before the May Brothers froze him out of R&M, Mr. Manfre was able to access the company's bank accounts and other financial records, and timely received unaudited monthly financial statements of R&M.  Around this time that the May Brothers removed him as a director from the Executive Committee, however, they cut off his access to this information.  Further, the May Brothers told Mr. Manfre that they would provide him only R&M's annual financial statements once they were available, and no other financial information.

**ANSWER:**     Denied.  Answering further, the May Brothers assert that Plaintiff has always

been entitled to review R&M's corporate books and records as allowed under the Illinois

Business Corporation Act.


60.     After the May Brothers took these steps to freeze Mr. Manfre out of R&M they also caused R&M to stop paying the customary consulting fee of $25,000 per year, payable in monthly installments, to Specials Transportation, Inc. ("Specials"), a trucking company owned solely by Mr. Manfre and which serves a different market from that of R&M.

**ANSWER:**     The May Brothers admit the allegations of paragraph 60 concerning Plaintiff's

ownership of Specials.  The May Brothers deny the remaining allegations of paragraph 60.

Answering further, the May Brothers state that Specials always served the same market as R&M,

that Specials only performed services consisting of emergency pick-ups and deliveries, the

majority of which were overflow business referred to Specials by R&M.

61.    In addition, on information and belief, the May Brothers decided to cast aside a longstanding agreement between R&M and Specials not to compete.  R&M began competing in Specials' niche in the trucking industry, and hired away Specials' general manager as part of the May Brothers' campaign to obtain leverage against Mr. Manfre so as to unlawfully oppress him as a minority shareholder in R&M and to provide him no return for his investment in R&M.

**ANSWER:**    The May Brothers state that they are without knowledge or information sufficient

to form a belief as the allegations of paragraph 61 concerning a pre-existing agreement between

R&M and Specials not to compete.  Answering further, and to the extent that any such non-

compete agreement had been in place, the May Brothers assert that it was Specials that first

violated that agreement when it began competing directly with R&M for similar business.  The

May Brothers deny the remaining allegations of paragraph 61.


62.    On February 12, 2008, counsel for Mr. Manfre wrote to the May Brothers, seeking to exercise Mr. Manfre's right to inspect and copy R&M's corporate records. Specifically, the letter requested to inspect and copy:  (1) R&M's books and records of account; (2) all minutes of meetings of shareholders, directors, and/or the Executive Committee of R&M; (3) any voting trust agreements filed with R&M; (4) the record of shareholders in R&M; (5) the audited balance sheets and profit and loss statements for R&M for its 2007 and 2006 fiscal years, and (6) any amendments to R&M's by-laws.

**ANSWER:**    The May Brothers admit that Plaintiff wrote to them on or about February 12,

2008, and requested that he be allowed to inspect and copy the referenced documents.  The May

Brothers further state that Plaintiff's alleged "right" to inspect and copy the corporate records is a

legal conclusion to be determined by this Court.


63.    The May Brothers responded, through their counsel, on February 20, 2008.  That response, however, did not address, in any way, the request to inspect and copy the requested R&M records.  To date, no response has been provided to this request and no records have been made available for inspection or copying.

**ANSWER:**    The May Brothers admit the allegations of paragraph 63 concerning their response to Plaintiff's request of February 12, 2008.  The May Brothers deny failing to provide any response to Plaintiff's request to inspect the aforementioned records.


## COUNT I:
## FOR SHAREHOLDER REMEDIES PURSUANT TO 805 ILCS 5/12.56
## AGAINST ALL DEFENDANTS

64.    Plaintiff Manfre repeats and realleges paragraphs 1 through 63 as if set forth in full in this paragraph.

**ANSWER:**    To the extent Plaintiff incorporates by reference the preceding paragraphs, the May Brothers incorporate by reference their answers to those paragraphs.


65.    R&M is named as a defendant in this Count I only insofar as it is a necessary party given the relief sought by Mr. Manfre pursuant to 805 ILCS 5/12.56(b)(11) and that may be awarded by the Court pursuant to 805 ILCS 5/12.56(f), which may direct that R&M purchase Mr. Manfre's shares in R&M for fair value.

**ANSWER:**    The May Brothers state that the allegations of paragraph 65 are legal conclusions to be made by this Court, and to the extent that an answer is required, deny those allegations.


66.    The May Brothers, both as directors of R&M and the persons in control of R&M have acted, are currently acting, and likely will act in the future in a manner that is oppressive with respect to Mr. Manfre.  Their oppressive actions include, but are not limited to:

      (a) the failure to authorize R&M pay dividends to all shareholders consistent with their reasonable expectations when they acquired R&M and consistent with the past practice of R&M's Board of Directors thereafter.

      (b) the failure to authorize R&M to pay dividends to each of the four R&M shareholders—the May Brothers and Mr. Manfre—equal to the net value of the bonuses and dividends paid to the May Brothers for 2006.

      (c) the failure to authorize R&M to pay dividends to Mr. Manfre for 2007.

      (d) the approval to exorbitant bonuses for the May Brothers for 2007.

      (e) the amendment of R&M's Articles of Incorporation to remove cumulative voting specifically to dilute the voting power of Mr. Manfre's shares.

(f) the amendment of R&M's Articles of Incorporation to increase the number of authorized shares from 100,000 to 5,000,000.

(g) the removal of Mr. Manfre as a director of R&M, making him the only shareholder in the corporation not a member of the Board of Directors.

(h) the removal of Mr. Manfre as a member of the R&M Executive Committee, making him the only shareholder in the corporation not a member of the Executive Committee;

(i) the interruption of Mr. Manfre's access to R&M's banking and financial information concerning the corporation; and

(j) the failure to pay Mr. Manfre's consulting fee to Specials on a monthly basis.

**ANSWER:**    Denied.

67.    The May Brothers' oppressive actions have been directed at Mr. Manfre in his capacity as a shareholder of R&M, a director of R&M, and Chairman of R&M's Board of Directors.

**ANSWER:**    Denied.

68.    In addition, the May Brothers are wasting the corporate assets of R&M by authorizing large payments to themselves while the company's performance fails to meet budgeted expectations and, in fact, has been declining. The actions taken by the May Brothers resulting in the wasting of R&M's corporate assets included, but are not limited to:

(a) R&M's paying bonuses and dividends to the May Brothers in 2006 that required the expenditure of more of the company's available cash that was necessary; and

(b) R&M's paying of exorbitant bonuses to the May Brothers for 2007, again in a manner that required the expenditure of more cash by R&M than would an equal amount in dividends.

**ANSWER:**    Denied.

69.    The result of the authorization and payment of these large bonuses has been to significantly diminish the value of R&M.

**ANSWER:**    Denied.

70.    The May Brothers' oppressive actions and waste of R&M's corporate assets have harmed Mr. Manfre, thereby entitling him to relief under Section 12.56 of the Illinois Business Corporation Act, 805 ILCS 5/12.56.

**ANSWER:**    Denied.


71.    The May Brothers have acted arbitrarily, vexatiously, or otherwise not in good faith toward Mr. Manfre.

**ANSWER:**    Denied.


WHEREFORE, plaintiff Thomas S. Manfre requests that the Court enter judgment in his favor and against Defendants, and enter an order awarding the following relief:

A.    Setting aside the exorbitant bonuses the May Brothers awarded themselves for 2007;

B.    Setting aside the amendment of R&M's Articles of Incorporation removing cumulative voting;

C.    Setting aside the amendment of R&M's Articles of Incorporation increasing the number of authorized shares from 100,000 to 5,000,000;

D.    Setting aside the removal of Mr. Manfre as a director of R&M.

E.    Setting aside the removal of Mr. Manfre as a member of the R&M Executive Committee;

F.    Setting aside the interruption of Mr. Manfre's access to R&M's banking and financial information;

G.    Prohibiting, and/or setting aside, any advancement by R&M of the May Brothers' attorneys' fees or other litigation expenses in this matter and any indemnifications by R&M of the May Brothers in this matter;

H.    Requiring R&M to pay Mr. Manfre's unpaid coaching fees;

I.    Damages resulting from the May Brothers' oppressive and wasteful conduct;

J.    Requiring the May Brothers, individually and collectively, and/or R&M, to purchase all of Mr. Manfre's shares in R&M for their fair value and on terms to be determined pursuant to §12.56(e) of the Illinois Business Corporation Act, 805 ILCS 5/12.56(e), as of the day before the filing of this Complaint or as of such

23

date the Court determines is appropriate under the circumstances, as provided in 805 ILCS 5/12.56(f)(6);

K.     Mr. Manfre's reasonable expenses, including counsel fees and the exepenses of appraisers or other experts incurred in this proceeding, pursuant to 805 ILCS 5/12.60(j);

L.     His costs in this action; and

M.     Such further relief the Court deems just and appropriate in the circumstances.

**ANSWER:**     The May Brothers deny the allegations of this paragraph and that Plaintiff is entitled to the relief sought.

## COUNT II:
## BREACH OF FIDUCIARY DUTY – AGAINST THE MAY BROTHERS

72.     Plaintiff Manfre repeats and realleges paragraphs 1 through 63 as if set forth in full in this paragraph.

**ANSWER:**     To the extent Plaintiff incorporates by reference the preceding paragraphs, the May Brothers incorporate by reference their answers to those paragraphs.

73.     As shareholders in a closely held corporation incorporated in Illinois, the May Brothers as individual shareholders of R&M, and collectively as shareholders of R&M who together act as the controlling majority, owe Mr. Manfre the duties of fiduciaries.

**ANSWER:**     The May Brothers admit only that they owe those duties imposed by law and, to the extent the allegations of paragraph 73 differ therefrom, deny those allegations.

74.     These duties require, among other things, that the May Brothers deal with Mr. Manfre with the utmost good faith, candor, loyalty and prudence.

**ANSWER:**     The May Brothers admit only that they owe those duties imposed by law and, to the extent the allegations of paragraph 74 differ therefrom, deny those allegations..

75.    The May Brothers breached the fiduciary duties they owe to Mr. Manfre.

**ANSWER:**    Denied.

76.    Mr. Manfre has been damaged as a result of the May Brothers' breaches of the fiduciary duties they owe him.  These damages include, but are not limited to, the denial on dividends and consulting fees that should have been paid him and the reduction of the value of his share in R&M.

**ANSWER:**    Denied.

WHEREFORE, plaintiff Thomas S. Manfre requests that the Court enter judgment in his favor and against defendants the May Brothers, and enter an order awarding the following relief:

A.    Damages resulting from the May Brothers' breaches of fiduciary duty owed to him;

B.    His costs in this action; and

C.    Such further relief the Court deems just and appropriate in the circumstances.

**ANSWER:**    The May Brothers deny the allegations of this paragraph and that Plaintiff is entitled to the relief sought.

## COUNT III:
### FAILURE TO ALLOW FOR EXAMINATION OF CORPORATE RECORDS IN VIOLATION OF 805 ILCS 5/7.75 – AGAINST ALL DEFENDANTS

77.    Plaintiff Manfre repeats and realleges paragraphs 1 through 63 as if set forth in full in this paragraph.

**ANSWER:**    To the extent Plaintiff incorporates by reference the preceding paragraphs, the May Brothers incorporate by reference their answers to those paragraphs.

78.    On February 12, 2008, as a shareholder of record of R&M, Mr. Manfre attempted to exercise his right to examine certain of R&M's records.  He specifically sought through his attorney to inspect the following R&M records:

> (a) R&M's books and records of account;
> (b) all minutes of meetings of shareholders, directors, and/or the R&M Executive Committee;
> (c) any voting trust agreements filed with R&M;
> (d) the record of shareholders in R&M;
> (e) the audited balance sheets and profit and loss statements for R&M for the 2007 fiscal year; and
> (f) an y amendments to R&M's by-laws.

**ANSWER:**    The May Brothers admit only that Plaintiff requested to inspect the referred records.  Answering further, the May Brothers assert that Plaintiff's "right" to inspect the records is a legal conclusion to be made by this Court.


79.    Additionally, Mr. Manfre requested that the May Brothers and R&M restore his receipt of monthly compilations of R&M's financial statements and all other information he regularly received in the past and access to R&M's banking information and all other information to which he previously had access.

**ANSWER:**    Admitted.


80.    In making these requests, Mr. Manfre acted with proper purpose, specifically to protect his interests as a twenty-five percent shareholder in R&M following the recent actions by the May Brothers against his interests, as well as to allow him to properly and timely prepare quarterly estimated tax payments so as not to significantly over or underpay his tax obligations.

**ANSWER:**    Denied.


81.    Since making this request, neither R&M nor any one of the May Brothers have provided Mr. Manfre with the opportunity to examine and copy the records to which he is statutorily entitled.

**ANSWER:**    Denied.

82.     The failure of R&M and the May Brothers to provide Mr. Manfre with the opportunity to examine and copy the requested R&M records violates the requirements of Section 7.75 of the Illinois Business Corporation Act, 805 ILCS 5/7.75, thereby entitling Mr. Manfre to relief under that statute.

**ANSWER:**     Denied.

WHEREFORE, plaintiff Thomas S. Manfre requests that the Court enter judgment in his favor and against Defendants, and enter an order awarding the following relief:

A.      Directing that R&M and the May Brothers to provide the corporate records of R&M that Mr. Manfre has requested;

B.      The entry of a penalty of ten percent of the value of Mr. Manfre's shares in R&M, pursuant to Section 7.75 of the Illinois Business Corporation Act, 805 ILCS 5/7.75, for the Defendants' failure to allow him to review the requested records of R&M;

C.      His costs in this action; and

D.      Such further relief the Court deems just and appropriate in the circumstances.

**ANSWER:**     The May Brothers deny the allegations of this paragraph and that Plaintiff is entitled to the relief sought.

## AFFIRMATIVE AND OTHER DEFENSES

The May Brothers assert the following affirmative and other defenses:

1.      Plaintiff fails to state a cause of action upon which relief may be granted.

2.      Plaintiff's claim fails because the May Brothers were not fiduciaries with respect to the conduct Plaintiff alleges in this suit.

3.      Plaintiff is not as a matter of law entitled to the forms of relief he seeks in this action.

4.    Plaintiffs' claims are barred because the May Brothers have fulfilled their obligations under the Illinois Business Corporation Act, 805 ILCS 5/101 *et seq*.

5.    Plaintiff's claims are barred because he failed to challenge any alleged errors or malfeasance on the part of the May Brothers pursuant to R&M's By-Laws and/or Articles of Incorporation.

6.    Plaintiff's claims are barred in whole or in part due to the doctrines of waiver, acquiescence and/or estoppel because, over the course of four (4) years, he agreed to a course of dealing that deviated from the express terms of the R&M's By-Laws and/or Articles of Incorporation.

7.    Plaintiff's claims are barred in whole or in part because he knowingly failed to mitigate his damages.

8.    Plaintiff's claims are barred in whole or in part due to the doctrine of unclean hands because Plaintiff has usurped several corporate opportunities, breached his own fiduciary duties, and otherwise hindered R&M's growth, all to R&M's damage.

9.    The May Brothers reserve all rights to assert any other Affirmative Defenses of which they may become aware in the course of discovery.

WHEREFORE, the May Brothers respectfully request that this Court dismiss Plaintiff's action with prejudice and award the May Brothers their costs incurred in defending this action and such additional relief as the Court deems just and equitable.

Respectfully submitted,

JEROME MAY, WILLIAM MAY and DAVID MAY,

By: _s/ Ethan F. Hayward_____
    One of their attorneys

Gerald Haberkorn
Simon J. Hill
Ethan F. Hayward
LOWIS & GELLEN LLP
200 W. Adams St., Suite 1900
Chicago, Illinois 60606
(312) 364-2500

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 7, 2008, a copy of the foregoing was filed electronically.

Notice of filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

 s/ Ethan F. Hayward
Ethan F. Hayward
Lowis & Gellen, LLP
200 W. Adams St., Suite 1900
Chicago, Illinois 60606
(312) 364-2500