IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS S. MANFRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  08 C 1281 |
| | ) | |
| JEROME MAY, WILLIAM MAY, | ) | Judge Matthew J. Kennelly |
| DAVID MAY, and R&M FREIGHT, | ) | Magistrate Judge |
| INC., | ) | Michael T. Mason |
| | ) | |
| Defendants. | ) | |
| _____ | | |
| | | |
| R&M FREIGHT, INC., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS S. MANFRE, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant. | ) | |

**DEFENDANT/COUNTER-PLAINTIFF R&M FREIGHT, INC.'S, ANSWER,
AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

NOW COMES Defendant/Counter-Plaintiff, R&M FREIGHT, INC. ("R&M"), by its attorneys, CHENG COHEN LLC, for its Answer and Affirmative Defenses to Plaintiff Thomas Manfre's Complaint [Doc. 1] and Counterclaims against Plaintiff/counter-defendant, Thomas Manfre ("Manfre"), states as follows:

**INTRODUCTION**

As regards paragraphs 1 through 63 of Plaintiff's Complaint concerning the Parties, Jurisdiction and Background Facts, R&M adopts and incorporates by reference the responses contained in the Answer and Affirmative Defenses of Defendants Jerome May, William May and

David May (collectively, the "May Brothers") to the extent that those allegations pertain to R&M, and, as only Counts I and III of Plaintiff's Complaint are alleged against it, R&M tenders responses only to the allegations of those counts.

## COUNT I:
## FOR SHAREHOLDER REMEDIES PURSUANT TO 805 ILCS 5/12.56
## AGAINST ALL DEFENDANTS

64. Plaintiff Manfre repeats and realleges paragraphs 1 through 63 as if set forth in full in this paragraph.

**ANSWER:** To the extent Plaintiff incorporates by reference the preceding paragraphs, R&M incorporates by reference its answers to those paragraphs.

65. R&M is named as a defendant in this Count I only insofar as it is a necessary party given the relief sought by Mr. Manfre pursuant to 805 ILCS 5/12.56(b)(11) and that may be awarded by the Court pursuant to 805 ILCS 5/12.56(f), which may direct that R&M purchase Mr. Manfre's shares in R&M for fair value.

**ANSWER:** R&M states that the allegations of paragraph 65 are legal conclusions to be made by this Court, and to the extent that an answer is required, R&M denies those allegations.

66. The May Brothers, both as directors of R&M and the persons in control of R&M have acted, are currently acting, and likely will act in the future in a manner that is oppressive with respect to Mr. Manfre. Their oppressive actions include, but are not limited to:

> (a) the failure to authorize R&M pay dividends to all shareholders consistent with their reasonable expectations when they acquired R&M and consistent with the past practice of R&M's Board of Directors thereafter.
> (b) the failure to authorize R&M to pay dividends to each of the four R&M shareholders—the May Brothers and Mr. Manfre—equal to the net value of the bonuses and dividends paid to the May Brothers for 2006.
> (c) the failure to authorize R&M to pay dividends to Mr. Manfre for 2007.
> (d) the approval to exorbitant bonuses for the May Brothers for 2007.
> (e) the amendment of R&M's Articles of Incorporation to remove cumulative voting specifically to dilute the voting power of Mr. Manfre's shares.
> (f) the amendment of R&M's Articles of Incorporation to increase the number of authorized shares from 100,000 to 5,000,000.

(g) the removal of Mr. Manfre as a director of R&M, making him the only shareholder in the corporation not a member of the Board of Directors.

(h) the removal of Mr. Manfre as a member of the R&M Executive Committee, making him the only shareholder in the corporation not a member of the Executive Committee;

(i) the interruption of Mr. Manfre's access to R&M's banking and financial information concerning the corporation; and

(j) the failure to pay Mr. Manfre's consulting fee to Specials on a monthly basis.

**ANSWER:** R&M asserts that the foregoing allegations are directed to the May Brothers, and to the extent that they implicate any wrongdoing by R&M, the allegations are denied.

67. The May Brothers' oppressive actions have been directed at Mr. Manfre in his capacity as a shareholder of R&M, a director of R&M, and Chairman of R&M's Board of Directors.

**ANSWER:** R&M asserts that the foregoing allegations are directed to the May Brothers, and to the extent that they implicate any wrongdoing by R&M, the allegations are denied.

68. In addition, the May Brothers are wasting the corporate assets of R&M by authorizing large payments to themselves while the company's performance fails to meet budgeted expectations and, in fact, has been declining. The actions taken by the May Brothers resulting in the wasting of R&M's corporate assets included, but are not limited to:

(a) R&M's paying bonuses and dividends to the May Brothers in 2006 that required the expenditure of more of the company's available cash that was necessary; and

(b) R&M's paying of exorbitant bonuses to the May Brothers for 2007, again in a manner that required the expenditure of more cash by R&M than would an equal amount in dividends.

**ANSWER:** R&M asserts that the foregoing allegations are directed to the May Brothers, and to the extent that they implicate any wrongdoing by R&M, the allegations are denied.

69. The result of the authorization and payment of these large bonuses has been to significantly diminish the value of R&M.

**ANSWER:** R&M asserts that the foregoing allegations are directed to the May Brothers, and to the extent that they implicate any wrongdoing by R&M, the allegations are denied. R&M further denies that its value has been significantly diminished.

70.     The May Brothers' oppressive actions and waste of R&M's corporate assets have harmed Mr. Manfre, thereby entitling him to relief under Section 12.56 of the Illinois Business Corporation Act, 805 ILCS 5/12.56.

**ANSWER:** R&M asserts that the foregoing allegations are directed to the May Brothers, and to the extent that they implicate any wrongdoing by R&M, the allegations are denied.

71.     The May Brothers have acted arbitrarily, vexatiously, or otherwise not in good faith toward Mr. Manfre.

**ANSWER:** R&M asserts that the foregoing allegations are directed to the May Brothers, and to the extent that they implicate any wrongdoing by R&M, the allegations are denied.

WHEREFORE, R&M respectfully requests that this Court enter judgment in its favor and against Plaintiff and award R&M its costs incurred in defending this action, and such additional relief as the Court deems just and equitable.

## COUNT III:
## FAILURE TO ALLOW FOR EXAMINATION OF CORPORATE RECORDS IN VIOLATION OF 805 ILCS 5/7.75 – AGAINST ALL DEFENDANTS

77.     Plaintiff Manfre repeats and realleges paragraphs 1 through 63 as if set forth in full in this paragraph.

**ANSWER:** To the extent Plaintiff incorporates by reference the preceding paragraphs, R&M incorporates by reference its answers to those paragraphs.

      78.    On February 12, 2008, as a shareholder of record of R&M, Mr. Manfre attempted to exercise his right to examine certain of R&M's records.  He specifically sought through his attorney to inspect the following R&M records:

      (a) R&M's books and records of account;
      (b) all minutes of meetings of shareholders, directors, and/or the R&M Executive Committee;
      (c) any voting trust agreements filed with R&M;
      (d) the record of shareholders in R&M;
      (e) the audited balance sheets and profit and loss statements for R&M for the 2007 fiscal year; and
      (f) any amendments to R&M's by-laws.

**ANSWER:** R&M admits only that Manfre requested to examine the referred records.  The remaining allegations as to Manfre's "right" to examine the records call for a legal conclusion to be made by this court.

      79.    Additionally, Mr. Manfre requested that the May Brothers and R&M restore his receipt of monthly compilations of R&M's financial statements and all other information he regularly received in the past and access to R&M's banking information and all other information to which he previously had access.

**ANSWER:** Admitted.

      80.    In making these requests, Mr. Manfre acted with proper purpose, specifically to protect his interests as a twenty-five percent shareholder in R&M following the recent actions by the May Brothers against his interests, as well as to allow him to properly and timely prepare quarterly estimated tax payments so as not to significantly over or underpay his tax obligations.

**ANSWER:** Denied.

      81.    Since making this request, neither R&M nor any one of the May Brothers have provided Mr. Manfre with the opportunity to examine and copy the records to which he is statutorily entitled.

**ANSWER:** Denied.

82. The failure of R&M and the May Brothers to provide Mr. Manfre with the opportunity to examine and copy the requested R&M records violates the requirements of Section 7.75 of the Illinois Business Corporation Act, 805 ILCS 5/7.75, thereby entitling Mr. Manfre to relief under that statute.

**ANSWER:** Denied.

WHEREFORE, R&M respectfully requests that this Court enter judgment in its favor and against Plaintiff and award R&M its costs incurred in defending this action, and such additional relief as the Court deems just and equitable.

### AFFIRMATIVE AND OTHER DEFENSES

R&M asserts the following affirmative and other defenses:

1. Plaintiff fails to state a cause of action upon which relief may be granted.

2. Plaintiff is not as a matter of law entitled to the forms of relief he seeks in this action.

3. Plaintiffs' claims are barred because R&M has fulfilled its obligations under the Illinois Business Corporation Act, 805 ILCS 5/101 *et seq*.

4. Plaintiff's claims are barred, in whole or in part, due to the doctrines of waiver, acquiescence and/or estoppel because, over the course of four (4) years, he agreed to a course of dealing that deviated from the express terms of the R&M's By-Laws and/or Articles of Incorporation.

5. Plaintiff's claims are barred, in whole or in part, because he knowingly failed to mitigate his damages.

6. Plaintiff's claims are barred, in whole or in part, due to the doctrine of unclean hands because, as described in R&M's Counterclaims, Plaintiff has usurped several corporate

opportunities, breached his own fiduciary duties, and otherwise hindered R&M's growth, all to R&M's damage.

7. R&M reserves all rights to assert any other Affirmative Defenses of which it may become aware in the course of discovery.

WHEREFORE, R&M respectfully requests that this Court enter judgment in its favor and against Plaintiff, and award R&M its costs incurred in defending this action and such additional relief as the Court deems just and equitable.

## COUNTERCLAIM

Defendant/Counter-Plaintiff, R&M FREIGHT, INC. ("R&M"), for its Counterclaim against Plaintiff/Counter-Defendant, Thomas Manfre, states as follows:

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1367(a).

2. Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Plaintiff/Counter-defendant is doing and transacting business in this Judicial District and has substantial contacts with and/or may be found in this Judicial District. Venue is also proper because the facts relating to this Counterclaim are already at issue and/or are intertwined with the facts of Civil Action No. 08-CV-01281, which is already pending in this Court.

3. This Court has personal jurisdiction over Plaintiff/Counter-defendant.

### BACKGROUND

4. As alleged in his Complaint, Manfre, at all relevant times, held twenty-five percent of the shares in R&M, while the May Brothers owned the remaining seventy-five

percent. Manfre was also a director of R&M and Chairman of its Board of Directors, up to and including January 9, 2008.

5. As alleged in his Complaint, Manfre also wholly owns and operates a trucking company known as Specials Transportation, Inc. ("Specials"), an Illinois corporation of which Manfre serves as both President and Secretary. Specials serves the same market as R&M, and R&M has referred some of its overflow business to Specials in the past, pursuant to an oral agreement and with the explicit understanding that any business opportunities over and above those referred to Specials were to belong solely to R&M. Specials, through Manfre, its sole owner and director, as well as a shareholder and director of R&M at the time of its formation, entered into the agreement for R&M's benefit. Until recently, Specials' only business consisted of emergency pick-ups and deliveries, nearly all of which were referred to it by R&M.

6. As a director and chairman of R&M, Manfre owed R&M the duties of a fiduciary. Further, as a significant shareholder of R&M, a closely held corporation, Manfre continues to owe R&M the duty of a fiduciary.

7. On information and belief, Manfre, in his capacity as an owner and director of Specials, has been soliciting and serving clients in the same market as that served by R&M, including several that had not been referred to Specials as part of its overflow arrangement with R&M, despite Manfre's own allegation that there had been "a longstanding agreement between R&M and Specials not to compete." Additionally, Specials has begun providing services other than emergency pick-ups and deliveries, many similar to those provided by R&M and at competitive prices.

8. R&M's corporate information, including but not limited to its finances, customer lists and the discount programs it makes available to certain repeat customers, is of significant

monetary value and is neither known to the general public nor R&M's competitors, nor is it readily obtainable.

9. R&M takes reasonable measures to maintain the secrecy of the aforementioned information, including maintaining the confidentiality of proceedings of director and shareholder meetings and allowing access to such information only to directors, officers and shareholders.

10. Manfre, both before and after he had served as a director of R&M, has been using R&M's corporate information, as gleaned from the proceedings of shareholder and Executive Committee meetings, as well as from corporate records and financial information, in order to direct and manage Specials in ways that directly compete with R&M. For example, Specials has sent solicitations to existing and prospective R&M customers highlighting Specials' "new pricing" for its freight services, which, on information and belief, have been set in order to undercut the rates typically charged by R&M.

11. On or about January 24, 2008, Specials' manager, Joyce Boudnek, sent a letter soliciting business from Schmidt, Pritchard & Co., Inc., a present customer of R&M. (*See* Exhibit A, attached hereto.) Boudnek's letter indicated that Specials sought to provide Schmidt, Pritchard & Co. with trucking services in the form of "regular pick up's and deliveries, special pick up's and deliveries, cartage and routes," and that Specials could meet Schmidt, Pritchard & Co.'s needs "at competitive rates." (*See* Ex. A.) All of the aforementioned services are of the type that R&M currently provides to Schmidt, Pritchard & Co. and which Specials had not previously provided to any customers.

12. On or about March 4, 2008, Boudnek sent a similar solicitation via e-mail to DHL Global Forwarding, another existing customer of R&M, this time detailing Specials' rates for trucking services and charges for services to particular locations and facilities. (*See* Exhibit B,

9

attached hereto.) Specials' rates have been set lower than those of R&M in order to undercut R&M's published rates and confidential discount programs, and to lure away R&M's existing customers.

13. On or about March 24, 2008, Boudnek sent notice to nearly all of R&M's existing clients of an offer by Specials to charge only a 15 percent fuel surcharge on all local orders placed on March 28, 2008. (*See* Exhibit C, attached hereto.) The fuel surcharge offer was made by Specials in order to undercut R&M's published rates and confidential discount programs, and to lure away R&M's existing customers.

14. Specials, at the direction of Manfre, both preceding and subsequent to his removal as a director of R&M, has been seeking business from clients to whom R&M had initially referred it, in contravention of the explicit understanding that future business from such clients were opportunities belonging to R&M.

15. In his capacity as owner and director of Specials, and with his intimate knowledge of R&M's internal operations finances, and discount programs, Manfre stands to reap substantial pecuniary gains both for himself and for Specials, all to the detriment of R&M.

16. As result, R&M has suffered and will suffer significant monetary damages measured by, among other things, the amounts Specials – and, by extension, Manfre – has received and will receive through unfairly competing with R&M and taking business for Specials and himself that rightfully belongs to R&M.

## COUNT I:  BREACH OF FIDUCIARY DUTY

17. R&M realleges and incorporates by reference the allegations contained in paragraphs 1 through 16 above, as though fully set forth herein.

18. While he was a director R&M, Manfre was its fiduciary, and owed R&M the duties of good faith, loyalty and honesty. Manfre also owed R&M a duty not to enhance his personal interests at the expense of R&M's interests, and not to actively exploit his position as a director of R&M for his own personal benefit or to hinder R&M from competing in the business for which it was developed. Furthermore, as a shareholder of R&M, Manfre continues to owe these duties to R&M and to his fellow shareholders.

19. Both before and after his removal as a director of R&M, Manfre has solicited business on behalf of Specials that he either knew or should have known were business opportunities belonging to R&M.

20. By soliciting business from Schmidt, Pritchard & Co. and DHL Global Forwarding, and, upon information and belief, numerous other R&M clients at rates designed to undercut those charged by R&M, Manfre has exploited his position as a shareholder and director of R&M by attempting to divert business away from it, and has done so for his own personal benefit.

21. The aforementioned actions also served to hinder the ability of R&M to continue the business it had developed with Schmidt, Pritchard & Co., DHL Global Forwarding and other R&M clients.

22. Manfre's actions constitute multiple breaches of his fiduciary duties to R&M.

23. Manfre's actions were performed with actual malice and in bad faith, and were wanton and willful.

24. As a result of Manfre's breaches, R&M has been damaged in an amount in excess of $75,000, including: (a) all losses incurred by R&M as a result of Manfre's breach, and (b) all

monies and benefits Manfre has received and will receive as a result of his breach of his fiduciary duty.

WHEREFORE, Defendant/counter-plaintiff R&M FREIGHT, INC. requests that the Court enter judgment in its favor and against Plaintiff/counter-defendant THOMAS S. MANFRE, and enter an order awarding the following relief:

A. Directing that Manfre disgorge and repay to, or hold in a constructive trust for, R&M all monies and benefits Manfre has received and will receive from opportunities he diverted to Specials and away from R&M;

B. Directing Manfre to refrain from further soliciting R&M's existing customers;

C. Awarding compensatory damages to R&M in excess of $75,000;

D. Awarding punitive damages to R&M;

E. Awarding R&M its costs incurred in this action; and

F. Such further relief the Court deems just and appropriate.

### COUNT II: USURPATION OF CORPORATE OPPORTUNITY

25. R&M realleges and incorporates by reference the allegations contained in paragraphs 1 through 16 above, as though fully set forth herein.

26. As a fiduciary of R&M, Manfre was prohibited from taking advantage of opportunities that belonged to R&M or were developed through the use of its assets, either for his own advantage or for that of Specials. As a fiduciary, Manfre was also obligated to disclose and tender any business opportunities of which R&M could reasonably take advantage.

27. The continued business that R&M could reasonably have expected from Schmidt, Pritchard & Co. and DHL Global Forwarding, among others, is the kind of activity that is incident to R&M's present business and in which R&M has – and always had – the present

capacity to engage. As such, continued business from Schmidt, Pritchard & Co. and DHL Global Forwarding, among others, were corporate opportunities belonging to R&M.

28. Manfre never disclosed to R&M or to any of its other shareholders or directors that Specials intended to pursue business from existing R&M customers, including but not limited to Schmidt, Pritchard & Co. and DHL Global Forwarding, as well as several customers to whom R&M had previously referred Specials for purposes of fielding its overflow business.

29. Manfre used his knowledge of R&M's inner workings, finances and discount programs to target Specials' marketing efforts to several of R&M's existing and prospective customers in a manner that unfairly competed with R&M.

30. Manfre's solicitation of existing and prospective R&M customers through Specials constitutes the usurpation of corporate opportunities rightfully belonging to R&M, as well as breaches of his fiduciary duty of loyalty to R&M.

31. Manfre's usurpation was performed with actual malice and in bad faith, and was wanton and willful.

32. As result of Manfre's usurpation, R&M has been damaged in the amount of lost opportunity as well as the amounts Specials and Manfre have received and will receive from their efforts to divert business away from R&M.

WHEREFORE, Defendant/counter-plaintiff R&M FREIGHT, INC. requests that the Court enter judgment in its favor and against Plaintiff/counter-defendant THOMAS S. MANFRE, and enter an order awarding the following relief:

A. Ordering an accounting of all assets realized by Manfre and Specials from, in connection with or as a result of the opportunities that Manfre diverted from R&M;

B. Directing that Manfre disgorge and repay to, or hold in a constructive trust for, R&M all monies and benefits Manfre and Specials have received and will receive as a result of his usurpation of R&M's business opportunities;

C. Directing Manfre and Specials to refrain from further soliciting R&M's existing customers;

D. Awarding compensatory damages to R&M in excess of $75,000;

E. Awarding punitive damages to R&M;

F. Awarding R&M its costs incurred in this action; and

G. Such further relief the Court deems just and appropriate.

## COUNT III: VIOLATION OF THE ILLINOIS TRADE SECRETS ACT

33. R&M realleges and incorporates by reference the allegations contained in paragraphs 1 through 16 above, as though fully set forth herein.

34. R&M's corporate information, including but not limited to its finances, customer lists, executive committee proceedings and discount programs, constitute trade secrets within the meaning of the Illinois Trade Secrets Act, 765 ILCS 1065/1, *et. seq.* ("ITSA"), as R&M: (a) derives value and competitive advantage from the fact that it is not known to either the general public or R&M's competitors in the trucking industry; and (b) makes reasonable efforts to maintain its secrecy.

35. As set forth above, Manfre has in fact misappropriated R&M's trade secrets by using his knowledge of R&M's discount programs to solicit Smith, Pritchard & Co. and DHL Global, in addition to all customers who received notice of Specials' fuel surcharge offer, in contravention of the aforementioned agreement between R&M and Specials regarding overflow business.

36. As a direct and proximate cause of Manfre's misappropriation, R&M has suffered actual damage and irreparable harm, including lost profits and good will. There is also no way to compensate R&M for the loss of its exclusive use of the aforesaid trade secrets.

37. R&M lacks an adequate remedy at law. The value of the loss of R&M repeat clients like Smith, Pritchard & Co. and DHL Global cannot be ascertained with reasonable certainty or compensated with monetary damages. There is no way to tell how much revenue R&M would have enjoyed from Smith, Pritchard & Co. and DHL Global, among others, in the future but for Manfre's misappropriation.

38. The harm that R&M has suffered, and will continue to suffer, as a result of Manfre's misappropriation outweighs any potential harm Manfre may suffer as a result of the injunctive relief that R&M seeks.

WHEREFORE, Defendant/counter-plaintiff R&M FREIGHT, INC. requests that the Court enter judgment in its favor and against Plaintiff/counter-defendant THOMAS S. MANFRE, and enter an order awarding the following relief:

A. An award of actual damages suffered by R&M as a result of Manfre's misappropriation of its trade secrets;

B. A preliminary and permanent injunction prohibiting Manfre from using or disclosing R&M's trade secrets;

C. A preliminary and permanent injunction prohibiting Manfre and/or Specials from directly or indirectly soliciting R&M's actual and prospective clients;

D. An order compelling Manfre to return all copies, whether in hard or electronic form, of any portion of R&M's corporate information and trade secrets or other R&M property in his possession;

E. Awarding R&M, in accordance with the ITSA, the reasonable costs and attorneys' fees incurred in bringing this action; and

F. Such further relief the Court deems just and appropriate.

**COUNT IV:  BREACH OF CONTRACT**

39. R&M realleges and incorporates by reference the allegations contained in paragraphs 1 through 16 above, as though fully set forth herein.

40. As set forth in paragraphs 5 and 7 above, R&M and Specials, through Manfre, its sole owner and director, had an agreement whereby R&M would refer any business which it did not have the current capacity to service to Specials, with the explicit understanding that any business not specifically referred to Specials was to remain a future business opportunity for R&M's benefit.

41. R&M performed is obligations pursuant to the agreement by referring its overflow business to Specials.

42. Specials, through Manfre, its sole owner and director, breached the agreement by soliciting the business of existing and prospective R&M clients which R&M had not specifically referred to it as overflow business.

43. Specials, through Manfre, its sole owner and director, further breached the agreement by usurping corporate opportunities that were explicitly understood to be reserved as future corporate opportunities for R&M's benefit.

44. As result of Specials' breach, R&M has been damaged in the amount of lost opportunity as well as the amounts Specials and Manfre have received and will receive from their efforts to solicit existing and prospective R&M clients in contravention of the agreement, as well as their efforts to divert business away from R&M.

WHEREFORE, Defendant/counter-plaintiff R&M FREIGHT, INC. requests that the Court enter judgment in its favor and against Plaintiff/counter-defendant THOMAS S. MANFRE, and enter an order awarding the following relief:

A.    Directing Manfre and Specials to refrain from further soliciting R&M's existing and prospective customers;

B.    Awarding compensatory damages to R&M in excess of $75,000;

C.    Awarding punitive damages to R&M;

D.    Awarding R&M its costs incurred in this action; and

E.    Such further relief the Court deems just and appropriate.

Dated:  April 7, 2008

                Respectfully submitted,

                R&M FREIGHT, INC.

                By: s/ Andrew P. Bleiman
                One of its attorneys

                FREDRIC A. COHEN (IL Bar No. 6198606)
                ANDREW P. BLEIMAN (IL Bar No. 6255640)
                Cheng Cohen LLC
                1101 W. Fulton Market, Suite 200
                Chicago, Illinois   60607
                Telephone:  (312) 243-1717
                Email: fredric.cohen@chengcohen.com
                      andrew.bleiman@chengcohen.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 7, 2008, a copy of the foregoing was filed electronically.

Notice of filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

                        s/ Andrew P. Bleiman
                        ANDREW P. BLEIMAN (IL Bar No. 6255640)
                        Cheng Cohen LLC
                        1101 W. Fulton Market, Suite 200
                        Chicago, Illinois   60607
                        Telephone:  (312) 243-1717
                        Email: andrew.bleiman@chengcohen.com