## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS S. MANFRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08 C 1281 |
| | ) | |
| JEROME MAY, WILLIAM MAY, | ) | Judge Matthew J. Kennelly |
| DAVID MAY, and R&M FREIGHT, | ) | Magistrate Judge |
| INC., | ) | Michael T. Mason |
| | ) | |
| Defendants. | ) | |
| _____ | | |
| | | |
| R&M FREIGHT, INC., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS S. MANFRE, Plaintiff/ | ) | |
| Counter-Defendant, and SPECIALS | ) | |
| TRANSPORTATION, INC., an Illinois | ) | |
| Corporation, Third-Party Defendant. | ) | |

**DEFENDANT/COUNTER-PLAINTIFF/THIRD-PARTY PLAINTIFF,
R&M FREIGHT, INC.'S AMENDED AFFIRMATIVE DEFENSES,
<u>AMENDED COUNTERCLAIM AND THIRD-PARTY COMPLAINT</u>**

NOW COMES Defendant/Counter-Plaintiff/Third-Party Plaintiff, R&M FREIGHT, INC. ("R&M"), by and through its attorneys, Cheng Cohen, LLC, and in accordance with Fed.R.Civ.P. 15(a), for its Amended Affirmative Defenses to Plaintiff Thomas Manfre's Complaint (Doc. 1), and for its Amended Counterclaim against Plaintiff/Counter-Defendant, Thomas Manfre ("Manfre") and Third-Party Complaint against Specials Transportation, Inc. ("Specials"), states as follows:

## AFFIRMATIVE AND OTHER DEFENSES

R&M asserts the following affirmative and other defenses:

1. Plaintiff's claims are barred in whole or in part by the business judgment rule, as the actions and business decisions of R&M's officers and directors that Plaintiff alleges were unlawful, including but not limited to Plaintiff's removal as a director and executive committee member of R&M, as well as the payment or non-payment of bonuses, salaries, dividends and/or consulting fees, were proper and were executed in the best interests of R&M and its shareholders.

2. Plaintiff's claims are barred in whole or in part by the doctrines of waiver, acquiescence and/or estoppel because he failed to challenge any alleged errors or malfeasance on the part of the May Brothers pursuant to R&M's By-Laws and/or Articles of Incorporation.

3. Plaintiff's claims are barred in whole or in part by the doctrines of waiver, acquiescence and/or estoppel because, over the course of four (4) years, he agreed to a course of dealing that deviated from the express terms of the R&M's By-Laws and/or Articles of Incorporation.

4. Plaintiff's claims are barred in whole or in part due to the doctrine of unclean hands because Plaintiff has usurped several corporate opportunities, breached his own fiduciary duties, and otherwise hindered R&M's growth, all to R&M's damage.

5. Plaintiff's claims are barred in whole or in part because he knowingly failed to mitigate his damages.

6. In further support of its Affirmative Defenses, R&M adopts and incorporate the allegations set forth in its Counterclaim and Third-Party Complaint.

WHEREFORE, R&M respectfully requests that this Court enter judgment in its favor and against Plaintiff, and award R&M its costs incurred in defending this action and such additional relief as the Court deems just and equitable.

**COUNTERCLAIM AND THIRD PARTY COMPLAINT**
**(By R&M Against Plaintiff/Counter-defendant Thomas Manfre**
**and Third-Party Defendant Specials Transportation, Inc.)**

**Jurisdiction and Venue**

1. This Court has subject matter jurisdiction over these Counterclaim and Third-Party Complaint pursuant to 28 U.S.C. §1367, because the present action is so related to claims in the underlying action that it forms part of the same case or controversy.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because both Plaintiff/Counter-defendant and Third-Party Defendant are doing and transacting business in this Judicial District and have substantial contacts with and/or may be found in this Judicial District. Venue is also proper because the facts relating to the Counterclaim and Third-Party Complaint are already at issue and/or are intertwined with the facts of Civil Action No. 08-CV-01281, which is already pending in this Court.

3. This Court has personal jurisdiction over Plaintiff/Counter-defendant and Third-Party Defendant.

**Background**

4. Manfre, at all relevant times, held twenty-five percent of the shares in R&M, while the May Brothers owned the remaining seventy-five percent of the shares in R&M. Up to and including January 9, 2008, Manfre was also a director of R&M, Chairman of its Board of Directors, and a member of its Executive Committee.

5. Manfre also wholly owns and operates a competing trucking company known as Specials Transportation, Inc. ("Specials").

6. Specials is an Illinois corporation.

7. Manfre serves as both President and Secretary of Specials.

8. Contrary to the allegations contained in Manfre's Complaint, R&M and Specials did not have a "longstanding agreement not to compete," but rather had an agreement whereby R&M would refer overflow business – such as emergency pick-ups and deliveries that it did not have the present capacity to execute – to Specials, with the understanding that any customers who had been referred to Specials under this arrangement were to be considered R&M customers and would remain as such in the event that those customers were ever in need of further services in the future.

9. Specials, through Manfre, its sole owner and director, as well as a shareholder and director of R&M at the time of its formation, entered into the agreement for R&M's benefit.

10. Pursuant to this agreement, over the years, R&M has referred some of its overflow business to Specials, again with the explicit understanding that any business opportunities over and above those overflow business opportunities specifically referred to Specials belonged solely to R&M.

11. Until recently, it was believed by R&M that Specials' only business consisted of emergency pick-ups and deliveries, nearly all of which were referred to it by R&M.

12. As a director and chairman of R&M, Manfre owed R&M the duties of a fiduciary, up to and including the date of his removal, January 9, 2008.

13. Further, as a significant shareholder of R&M, a closely held corporation, Manfre continues to owe R&M the duty of a fiduciary.

14. Since as early as 2005, Manfre, in his capacity as an owner and director of Specials, had been soliciting and serving clients in the same market as that served by R&M, including several that had not been referred to Specials as part of its overflow arrangement with R&M, despite Manfre's own knowledge and understanding of the longstanding agreement between R&M and Specials not to compete.

15. Additionally, Specials has begun providing services other than emergency pick-ups and deliveries, many similar to those provided by R&M.

16. Among the R&M customers that Specials solicited and did business with – without first tendering such opportunities to R&M – were: ABX, Affiliated Control, American River Logistics, BDG International, DHL/Danzas, DHL Global Forwarding, DSV Sea Air, Expeditors International, HBL/Hellman Worldwide, Leman USA, Palatine Welding, Print Flex, RS Express, Schmidt Pritchard & Co. and Union Transportation.

17. R&M's corporate information, including but not limited to its finances and the discount programs it makes available to certain repeat and volume customers, is of significant monetary value and is neither known to the general public nor R&M's competitors, nor is it readily obtainable.

18. R&M takes reasonable measures to maintain the secrecy of the aforementioned information, including maintaining the confidentiality of proceedings of director and shareholder meetings and allowing access to such information only to directors, officers and shareholders.

19. Manfre, both before and after he had served as a director, chairman of the board, and a member of R&M's executive committee, has been using R&M's corporate information, as gleaned from the proceedings of shareholder and Executive Committee meetings, as well as from corporate records and financial information, in order to direct and manage Specials in ways that

directly compete with R&M. For example, Specials has sent solicitations to existing and prospective R&M customers highlighting Specials' "new pricing" for its freight services, which, on information and belief, have been set in order to undercut the rates typically charged by R&M.

20. Specials, at the direction of Manfre, both before and after his removal as a director, chairman of the board and member of R&M's executive committee, has been seeking business from clients to whom R&M had in*iti*ally referred it, in contravention of Manfre's fiduciary duties to R&M and the explicit understanding that future business from such clients were opportunities belonging to R&M.

21. For example, on or about January 24, 2008, Specials' manager, Joyce Boudnek, sent a letter soliciting business from Schmidt, Pritchard & Co., Inc., a present customer of R&M. Boudnek's letter indicated that Specials sou*ght* to pro*vid*e Schmidt, Pritchard & Co. with trucking services in the form of "regular pick up's and deliveries, special pick up's and deliveries, cartage and routes," and that Specials could meet Schmidt, Pritchard & Co.'s needs "at competitive rates." All of the af*ore*mentioned services are of the type that R&M currently provides to Schmidt, Pritchard & Co. and which Specials had not previously provided to any customers, at least not with R&M's knowledge.

22. On or about March 4, 2008, Boudnek sent a similar solicitation via e-mail to DHL Global Forwarding, another existing customer of R&M, this time detailing Specials' rates for trucking services and charges for services to particular locations and facilities. On information and belief, Specials' current rates have been set lower than those of R&M in order to undercut R&M's published rates and confidential customer discounts, and to lure away R&M's existing customers.

23.     On or about March 24, 2008, Boudnek sent notice to nearly all of R&M's existing clients of an offer by Specials to charge only a 15 percent fuel surcharge on all local orders placed on March 28, 2008.

24.     On information and belief, the fuel surcharge offer was set lower than that customarily charged by R&M in order to undercut R&M's published rates and confidential discount programs, and to lure away R&M's existing customers.

25.     In his capacity as owner and director of Specials, and with his intimate knowledge of R&M's internal operations finances and customer discounts, Manfre has reaped and stands to reap substantial pecuniary gains both for himself and for Specials, all to the detriment of R&M.

26.     As result, R&M has suffered and will suffer significant monetary damages measured by, among other things, the amounts Specials – and, by extension, Manfre – has received and will receive through unfairly competing with R&M and taking business for Specials and himself that rightfully belongs to R&M.

## COUNT I: Breach of Fiduciary Duty (against Manfre)

27.     R&M realleges and incorporates by reference the allegations contained in paragraphs 1 through 26 above, as though fully set forth herein.

28.     While he was a director, chairman of the board and member of R&M's executive committee, Manfre was a fiduciary to R&M, and as such owed R&M the fiduciary duties of good faith, loyalty and honesty.  Manfre also owed R&M a fiduciary duty not to enhance his own personal interests at the expense of R&M's interests, and not to actively exploit his position as a director, chairman of the board and member of R&M's executive committee for his own personal benefit or to hinder R&M from competing in the business for which it was developed. Furthermore, as a significant shareholder of R&M with the ability to hinder and/or influence the

7

corporation through, among other things, his sole ownership and control of a competing enterprise, Manfre continues to owe these duties to R&M and to his fellow shareholders.

29. Both before and after his removal as a director, chairman of the board and member of R&M's executive committee, Manfre solicited and continues to solicit business on behalf of Specials that he either knew or should have known were business opportunities belonging to R&M.

30. By soliciting business from, among others, ABX, Affiliated Control, American River Logistics, BDG International, DHL/Danzas, DHL Global Forwarding, DSV Sea Air, Expeditors International, HBL/Hellman Worldwide, Leman USA, Palatine Welding, Print Flex, RS Express, Schmidt Pritchard & Co. and Union Transportation at rates designed to undercut those charged by R&M (as exemplified in the offers described in Exhibit A), Manfre exploited his position as a shareholder and director, chairman of the board and member of R&M's executive committee by diverting business away from it, and did so for his own personal benefit.

31. The aforementioned actions also served to hinder the ability of R&M to continue the business it had developed with ABX, Affiliated Control, American River Logistics, BDG International, DHL/Danzas, DHL Global Forwarding, DSV Sea Air, Expeditors International, HBL/Hellman Worldwide, Leman USA, Palatine Welding, Print Flex, RS Express, Schmidt Pritchard & Co. and Union Transportation, among others.

32. Manfre's actions constitute multiple breaches of his fiduciary duties to R&M.

33. Manfre's actions were performed with actual malice and in bad faith, and were wanton and willful.

34. As a result of Manfre's breaches, R&M has been damaged in an amount in excess of $1,000,000, including, *inter alia*: (a) all losses incurred by R&M as a result of Manfre's

breach, and (b) all monies and benefits Manfre received and will receive as a result of his multiple breaches of his fiduciary duty.

WHEREFORE, Defendant/counter-plaintiff R&M FREIGHT, INC. requests that the Court enter judgment in its favor and against Plaintiff/counter-defendant THOMAS S. MANFRE, and enter an order awarding the following relief:

A. Directing that Manfre disgorge and repay to, or hold in a constructive trust for, R&M all monies and benefits Manfre has received and will receive from opportunities he diverted to Specials and away from R&M;

B. Directing Manfre to refrain from further soliciting R&M's existing customers;

C. Awarding compensatory damages to R&M in excess of $75,000;

D. Awarding punitive damages to R&M;

E. Awarding R&M its costs incurred in this action; and

F. Such further relief the Court deems just and appropriate.

### COUNT II: Usurpation of Corporate Opportunity (against Manfre)

35. R&M realleges and incorporates by reference the allegations contained in paragraphs 1 through 26 above, as though fully set forth herein.

36. As an officer, director and fiduciary of R&M, Manfre was prohibited from taking advantage of opportunities that belonged to R&M or were developed through the use of its assets, either for his own advantage or for that of Specials. As an officer, director and fiduciary, Manfre was also obligated to disclose and tender any business opportunities of which R&M could reasonably take advantage.

37. The continued business that R&M could reasonably have expected from ABX, Affiliated Control, American River Logistics, BDG International, DHL/Danzas, DHL Global Forwarding, DSV Sea Air, Expeditors International, HBL/Hellman Worldwide, Leman USA, Palatine Welding, Print Flex, RS Express, Schmidt Pritchard & Co. and Union Transportation,

9

among others, is the kind of activity that is incident to R&M's present business and in which R&M has – and always had – the present capacity to engage. As such, continued business from the aforementioned entities were corporate opportunities belonging to R&M.

38. Manfre never disclosed to R&M or to any of its other shareholders or directors that Specials intended to pursue business from existing R&M customers, including but not limited to ABX, Affiliated Control, American River Logistics, BDG International, DHL/Danzas, DHL Global Forwarding, DSV Sea Air, Expeditors International, HBL/Hellman Worldwide, Leman USA, Palatine Welding, Print Flex, RS Express, Schmidt Pritchard & Co. and Union Transportation, as well as several other customers to whom R&M had previously referred Specials for purposes of fielding its overflow business.

39. Manfre used his position as a shareholder, officer, director, chairman of the board and member of R&M's executive committee, as well as his knowledge of R&M's governance, finances and volume customer discount programs to target Specials' marketing efforts to the aforementioned entities and several other existing and prospective R&M customers in a manner that unfairly competed with R&M.

40. Manfre's solicitation of existing and prospective R&M customers through Specials constitutes the usurpation of corporate opportunities rightfully belonging to R&M, as well as breaches of his fiduciary duty of loyalty to R&M.

41. Manfre's usurpation was performed with actual malice and in bad faith, and was wanton and willful.

42. As result of Manfre's usurpation, R&M has been damaged in the amount of lost opportunity as well as the amounts Specials and Manfre have received and will receive from their efforts to divert business away from R&M, an amount believed to exceed $1,000,000.

WHEREFORE, Defendant/counter-plaintiff R&M FREIGHT, INC. requests that the Court enter judgment in its favor and against Plaintiff/counter-defendant THOMAS S. MANFRE, and enter an order awarding the following relief:

A. Ordering an accounting of all assets realized by Manfre and Specials from, in connection with or as a result of the opportunities that Manfre diverted from R&M;

B. Directing that Manfre disgorge and repay to, or hold in a constructive trust for, R&M all monies and benefits Manfre and Specials have received and will receive as a result of his usurpation of R&M's business opportunities;

C. Directing Manfre and Specials to refrain from further soliciting R&M's existing customers;

D. Awarding compensatory damages to R&M in excess of $75,000;

E. Awarding punitive damages to R&M;

F. Awarding R&M its costs incurred in this action; and

G. Such further relief the Court deems just and appropriate.

### COUNT III: Violation of the Illinois Trade Secrets Act
### (against Manfre and Specials)

43. R&M realleges and incorporates by reference the allegations contained in paragraphs 1 through 26 above, as though fully set forth herein.

44. R&M's corporate information, including but not limited to its finances, director and executive committee meeting proceedings, and its volume customer discount programs constitute trade secrets within the meaning of the Illinois Trade Secrets Act, 765 ILCS 1065/1, *et. seq.* ("ITSA"), as R&M: (a) derives value and competitive advantage from the fact that the information is not known to either the general pu*blic or R*&M's competitors in the trucking industry; and (b) makes reasonable efforts to maintain its secrecy.

45. As set forth above, Manfre and Specials have in fact misappropriated R&M's trade secrets by using Manfre's knowledge of R&M's repeat customer and volume discount

programs to solicit ABX, Affiliated Control, American River Logistics, BDG International, DHL/Danzas, *DHL Globa*l Forwarding, DSV Sea Air, Expeditors International, HBL/Hellman Worldwide, Leman USA, Palatine Welding, Print Flex, RS Express, Schmi*dt Pritch*ard & Co. and Union Transportation, in addition to all customers who received notice of Specials' fuel surcharge offer, in contravention of the aforementioned agreement between R&M and Specials regarding overflow business, and to their mutual benefit.

46. As a direct and proximate cause of Manfre and Specials' misappropriation, R&M has suffered actual damage and irreparable harm, including lost profits and good will. Further, R&M cannot adequately assess the future revenue it would have enjoyed from the aforementi*oned exis*ting customers Manfre and Specials solicited had they not used their knowledge of R&M's repeat customer and volume discount programs t*o divert* them to Specials.

47. R&M lacks an adequate remedy at law. The value of the loss of R&M repeat clients like ABX, Affiliated Control, American River Logistics, BDG International, DHL/Danzas, DHL Global Forwarding, DSV Sea Air, Expeditors International, HBL/Hellman Worldwide, Leman *USA, Pala*tine Welding, Print Flex, RS Express, Schmidt Pritchard & Co. and Union Transportation cannot be ascertained with reasonable certainty *or compe*nsated with monetary damages.

48. The harm that R&M has suffered, and will continue to suffer, as a result of Manfre and Specials' misappropriation outweighs any potential harm Manfre or Specials may suffer as a result of the injunctive relief that R&M seeks.

WHEREFORE, Defendant/counter-*plaintif*f R&M FREIGHT, INC. requests that the Court enter judgment in its favor and against Plaintiff/counter-defendant THOMAS S. MANFRE and T*hird-Part*y Defendant SPECIALS TRANSPORTATION, INC., and enter an order awarding the following relief:

   A.      An award of actual damages suffered by R&M as a result of Manfre and Specials' misappropriation of its trade secrets;

   B.      A preliminary and permanent injunction prohibiting Manfre and Specials from using or disclosing R&M's trade secrets;

   C.      A preliminary and permanent injunction prohibiting Manfre and Specials from directly or indirectly soliciting R&M's actual and prospective clients;

   D.      An order compelling Manfre and Specials to return all copies, whether in hard or electronic form, of any portion of R&M's corporate information and trade secrets or other R&M property in his possession;

   E.      Awarding R&M, in accordance with the ITSA, the reasonable costs and attorneys' fees incurred in bringing this action; and

   F.      Such further relief the Court deems just and appropriate.

### COUNT IV: Breach of Oral Agreement (against Specials)

49. R&M realleges and incorporates by reference the allegations contained in paragraphs 1 through 26 above, as though fully set forth herein.

50. As set forth in paragraphs 5 through 11 above, R&M and Specials, through Manfre, its sole owner and director, had an agreement whereby R&M would refer to Specials some of its overflow business that it did not have the current capacity to service, with the explicit understanding that any business opportunity not specifically referred to Specials was to remain a business opportunity belonging to R&M and for R&M's benefit.

51. R&M performed is obligations pursuant to the agreement by referring its overflow business to Specials.

52. Specials, through Manfre, breached the agreement by soliciting the business of existing and prospective R&M clients which R&M had not specifically referred to it as overflow business.

53. Specials, through Manfre, further breached the agreement by usurping corporate opportunities that were explicitly understood to be reserved as future corporate opportunities belonging to R&M and for R&M's benefit.

54. As result of Specials' breach, R&M has been damaged in the amount of lost opportunity as well as the amounts Specials and Manfre have received and will receive from their efforts to solicit existing and prospective R&M clients in contravention of the agreement, as well as their efforts to divert business away from R&M, an amount believed to exceed $1,000,000.

WHEREFORE, Defendant/counter-plaintiff R&M FREIGHT, INC. requests that the Court enter judgment in its favor and against Third-Party Defendant SPECIALS TRANSPORTATION, INC., and enter an order awarding the following relief:

A. Directing Specials to refrain from further soliciting R&M's existing and prospective customers;

B. Awarding compensatory damages to R&M in excess of $1,000,000;

C. Awarding R&M its costs incurred in this action; and

D. Such further relief the Court deems just and appropriate.

Dated: September 9, 2008                    Respectfully submitted,

                                            R&M FREIGHT, INC.

                                            By:  s/ Andrew P. Bleiman_____
                                                One of its attorneys

Fredric A. Cohen
Andrew P. Bleiman
CHENG COHEN LLC
1101 West Fulton Market, Suite 200
Chicago, Illinois 60607
312-243-1701
312-277-3961 (fax)
fredric.cohen@chengcohen.com
andrew.bleiman@chengcohen.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing was filed served via the CM/ECF system on September 9, 2008, on all counsel of record:

                                                          s/ Andrew Bleiman  
                                                           Andrew P. Bleiman