**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS S. MANFRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  08 C 1281 |
| | ) | |
| JEROME MAY, WILLIAM MAY, | ) | Judge Matthew J. Kennelly |
| DAVID MAY, and R&M FREIGHT, | ) | Magistrate Judge |
| INC., | ) | Michael T. Mason |
| | ) | |
| Defendants. | ) | |
| _____ | | |
| | | |
| R&M FREIGHT, INC., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS S. MANFRE, Plaintiff/ | ) | |
| Counter-Defendant, and SPECIALS | ) | |
| TRANSPORTATION, INC., an Illinois | ) | |
| Corporation, Third-Party Defendant. | ) | |

**RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS
<u>R&M'S COUNTERCLAIM</u>**

Defendant/Counter-Plaintiff, R&M FREIGHT, INC. ("R&M"), by its undersigned counsel and for its Response in Opposition to the Motion to Dismiss (Doc. 28) and Memorandum in Support thereof (Doc. 29) filed by Plaintiff/Counter-Defendant THOMAS S. MANFRE ("Manfre"), states as follows:

**Introduction**

As preliminary matter, R&M directs the Court and Mr. Manfre to its Amended Affirmative Defenses, Amended Counterclaim and Third-Party Complaint (Doc. 42) filed on September 9, 2008 which cures any purported defects in R&M's original Counterclaim (Doc. 18)

and obviates the need for R&M to respond to the instant Motion. *See Halliday v. Spjute*, 2008 WL 190577, at *1 (E.D. Cal. Jan. 22, 2008); *Peeples v. Beneficial Nevada, Inc.*, 2006 WL 3228421, at *1 (D. Nev. Nov. 3, 2006)(an amended pleading filed as a matter of course supersedes the original and effectively moots a motion to dismiss directed to the original). Nevertheless, to the extent that the Court intends to address the merits of Manfre's Motion, R&M responds as follows.

Manfre's Motion and supporting Memorandum are untenable and ignore R&M's well-pleaded facts that detail Manfre's breach of fiduciary duty, usurpation of corporate opportunities and misappropriation of R&M's trade secrets, as well as Specials' breach of contract. Likewise, R&M's amended pleading vitiates any defects Manfre alleged and includes references to facts acquired by R&M after it filed its original Counterclaim. Accordingly, Manfre's motion to dismiss should be denied.

## ARGUMENT

Manfre fails to indicate the basis for his Motion to Dismiss or the standard according to which it should be decided. It is apparent from the face of the Motion and the Memorandum in Support that it seeks to test the legal sufficiency of R&M's counterclaim rather than its merits. As such, the Court should treat the instant Motion as one brought pursuant to FED.R.CIV.P. 12(b)(6). *See Divane v. Majestic Properties, Inc.*, 2002 WL 126106, at *3 (N.D. Ill. Jan. 31, 2002), *citing Triad Assocs, Inc. v. Chicago Housing Authority*, 892 F.2d 583, 586 (7thCir. 1989).

Manfre's motion improperly relies on unplead facts and attaches exhibits that are outside the four corners of R&M's counterclaim. Specifically, in seeking dismissal of R&M's misappropriation of trade secrets claim, Manfre attaches print-outs of R&M's website containing information about its published rates and surcharges. (*See* Doc. 28, Ex. A.) In deciding a Rule

12(b)(6) motion to dismiss, courts are limited to the four corners of the complaint, and may only consider and refer to documents not attached to the initial pleading if they are referred to in the complaint and central to the complainant's claim, or if they are matters of public record. *See Venture Assocs. Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997). While R&M's counterclaim acknowledges that its rates and surcharges are published, it did not attach its financial records or information concerning its confidential discount programs. Nor can Manfre credibly argue that such information is a matter of public knowledge. Accordingly, the Court should disregard the exhibits submitted in support of Manfre's Motion.

Furthermore, contrary to Manfre's assertions, R&M's initial Counterclaim neither adopts nor incorporates by reference the May Brothers' Answer and Affirmative Defenses. (*See, e.g.*, Doc. 28, at p. 8.) The May Brothers' initial Answer is adopted and contained solely within certain portions of R&M's own Answer, not its Counterclaim. While a party may incorporate an earlier pleading or the pleading of another party as its own under FED.R.CIV.P. 10(c), the portions that the party seeks to adopt must be specifically identified. *See Federal National Mortgage Ass'n v. Cobb*, 738 F.Supp. 1220, 1226-27 (N.D. Ind. Jun. 1, 1990). R&M's original Counterclaim and Amended Counterclaim are stand-alone pleadings and are in no way dependent or based upon the May Brothers' separate responsive pleading. Accordingly, the Court should disregard any arguments Manfre bases on allegations contained within the May Brothers' initial Answer.

In order to withstand a FED.R.CIV.P. 12(b)(6) motion, a complaint (or counterclaim) must: (1) describe the complainant's claim in sufficient detail to give the opposing party fair notice of what the claim is and the grounds upon which it rests, and (2) plausibly suggest that the

complainant has a right to relief with a possibility above a "speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007); *EEOC v. Concentra HealthServs, Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007). Put another way, a complainant must show that its allegations, if true, create a possible and plausible right to relief, even if the likelihood of proving the allegations after discovery is very remote. *Bell Atlantic*, 127 S.Ct. at 1965-66; *Killingsworth v. HSBC Bank Nevada,* 507 F.3d 614, 618-19 (7th Cir. 2007); *Mitzka v. Village of Westmont*, 2007 WL 3334336, at *2 (N.D. Ill. Nov. 6, 2007).

R&M's allegations form a plausible right to relief based upon Manfre's abuse of his position of trust as a fiduciary and his misappropriation of R&M's confidential information. As demonstrated herein, the Court should deny Manfre's Motion to Dismiss in its entirety.

**I.      R&M Has Sufficiently Pled Causes of Action for Breach of Fiduciary Duty and Usurpation of Corporate Opportunities.**

Manfre mischaracterizes R&M's allegations concerning breach of fiduciary duty and usurpation of corporate opportunities. Contrary to Manfre's contentions, R&M's claim – that Manfre improperly directed Specials to solicit and service R&M customers in violation of his fiduciary duty and to the detriment of R&M – are based upon Manfre's duties and conduct ***prior*** to his removal as officer and director.

*A.      Counts I and II Are Predicated on Both Manfre's Status as an Officer/Director and Shareholder of R&M.*

In order to plead a cause of action for a breach of fiduciary duty against Manfre, R&M is required to allege facts sufficient to prove that: (1) Manfre owed R&M a fiduciary duty; (2) that he breached that duty; and (3) that R&M suffered damages as a result. *In re Edgewater Medical Center*, 373 B.R. 845, 858 (N.D. Ill. Aug. 16, 2007). In order to plead a cause of action for usurpation of corporate opportunity against Manfre, R&M must allege facts sufficient to prove

4

that: (1) corporate opportunities existed in the form of proposed activities that were reasonably incident to R&M's present or prospective business and in which R&M had the capacity to engage; (2) Manfre, as a fiduciary, was required to disclose and tender any such opportunities to R&M; and (3) that Manfre failed to disclose and tender such opportunities and took advantage of them for his own interests. See *In re H. King & Assocs.*, 295 B.R. 246, 274 (N.D. Ill. Jun. 23, 2003).

It cannot be disputed (and it isn't) that Manfre owed R&M a fiduciary duty while he was one of R&M's directors. Under Illinois law, corporate officers and directors are fiduciaries of the corporation and owe duties of good faith, loyalty and honesty, as well as a duty not to enhance their personal interests at the expense of the corporation's interests. *In re H. King*, 295 B.R. at 268. Further, R&M has sufficiently asserted a breach of Manfre's duty to enhance his personal interests to R&M's detriment.

R&M explicitly alleged in its initial counterclaim that:

> "10.  Manfre, *both before and after he served as a director of R&M*, has been using R&M's corporate information, as gleaned from the proceedings of shareholder and Executive Committee meetings, as well as from corporate records and financial information, in order to direct and manage Specials in ways that directly compete with R&M." Doc. 18, ¶ 10 (emphasis added).

\* \* \*

> "19.  *Both before and after his removal as a director of R&M*, Manfre has solicited business on behalf of Specials that he either knew or should have known were business opportunities belonging to R&M."

Doc. 18, ¶ 19 (emphasis added).

Similarly, R&M's Amended Counterclaim alleges:

> "8.  *Since as early as 2005, Manfre, in his capacity as an owner and director of Specials*, had been soliciting and serving clients in the same market as that served by R&M, including several that had not been referred to Specials as part of its overflow arrangement with R&M, despite Manfre's own allegation that

> there had been 'a longstanding agreement between R&M and Specials not to compete.' Additionally, Specials has begun providing services other than emergency pick-ups and deliveries, many similar to those provided by R&M. Among the customers that Specials solicited and did business with – without first tendering such opportunities to R&M – were: ABX, Affiliated Control, American River Logistics, BDG International, DHL/Danzas, DHL Global Forwarding, DSV Sea Air, Expeditors International, HBL/Hellman Worldwide, Leman USA, Palatine Welding, Print Flex, RS Express, Schmidt Pritchard & Co. and Union Transportation."

Amd. Counterclaim at ¶ 8 (emphasis added).

> "20.  *Both before and after his removal as a director*, chairman of the board and member of R&M's executive committee, Manfre solicited and continues to solicit business on behalf of Specials that he either knew or should have known were business opportunities belonging to R&M."

Amd. Counterclaim at ¶ 20 (emphasis added).

R&M's claim for breach of fiduciary duty is clearly based on both Manfre's status as director and shareholder, and is in no way limited to events occurring after January 9, 2008.

Additionally, Count II is not limited to only those instances known to have occurred after that date. Specials' solicitation of Schmidt Pritchard & Co. and DHL Global Forwarding in January and March of 2008 are merely cited as examples of documented attempts by an entity wholly controlled by Manfre to divert business away from R&M. R&M explicitly alleged that, on information and belief, similar solicitations had taken place prior to Manfre's removal as a director.[1] Accordingly, R&M's claims for breach of fiduciary duty and usurpation should not be dismissed based on Manfre's myopic view of the facts alleged.

Following his removal as an officer and director, Manfre, in his capacity as a shareholder, owes a fiduciary duty to R&M and its shareholders because he has the ability to hinder, influence or control R&M. *See Dowell v. Bitner*, 273 Ill.App.3d 681, 691, 652 N.E.2d 1372, 1379 (1995).

---

[1]  Limited discovery obtained by R&M demonstrates that Specials had been soliciting and repeatedly servicing numerous R&M customers dating back to at least 2005. A representative sample of those customers is included in R&M's Amended Counterclaim.

6

Although Manfre claims that he does not have the ability to hinder, influence or control R&M as a matter of law due to the alleged issuance of additional stock and the alleged elimination of cumulative voting, the existence of a fiduciary duty on Manfre's part as a minority shareholder, is a question of fact, not law, and thus is not an issue appropriate for resolution on a 12(b)(6) motion to dismiss. *See Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 341-42 (N.D. Ill. 1997); *Medline Industries, Inc. Employee Profit Sharing & Retirement Trust v. Blunt, Ellis & Loewi, Inc.*, 1993 WL 13436, at * 13 (N.D. Ill. Jan. 21, 1993); *Liu v. Price Waterhouse, LLP*, 1999 WL 1012452, at * 2 (N.D. Ill. Oct. 19, 1999).

Specials' continued and improper solicitation of R&M customers after Manfre's removal as an officer and director of R&M supports the claim for breach of fiduciary duty. Minority shareholders have an obligation as *de facto* partners in a joint venture not to do damage to corporate interests. *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1219 (7th Cir. 1995). Consequently, Manfre has such an obligation to R&M as a minority shareholder – and it is nevertheless an issue for another day.

Accordingly, the Court should deny Manfre's Motion with regard to Counts I and II.

### B. R&M Sufficiently Alleges Damages as a Result of Manfre's Breach of Duty and Usurpation.

Manfre contends that Counts I and II of R&M's initial counterclaim fail to properly allege damage on the part of R&M incurred as a result of Manfre's breach of fiduciary duty and usurpation. (Doc. 29, at pp. 9, 10.) Count I of R&M's original Counterclaim specifically states as follows:

> "24. As a result of Manfre's breaches, R&M has been damaged in an amount in excess of $75,000, including: (a) all losses incurred by R&M as a result of Manfre's breach, and (b) all monies and benefits Manfre has received and Will receive as a result of his breach of fiduciary duty."

7

(Doc. 18, at ¶ 24.)

Similarly, Count II reads:

"32.    As a result of Manfre's usurpation of, R&M has been damaged in the amount of lost opportunity as well as the amounts Specials and Manfre have received and will receive from their efforts to divert business in R&M."

(Doc. 18, at ¶ 32.)

R&M alleged that Manfre was successful in his efforts to divert existing and potential R&M customers toward Specials. The exhibits attached to R&M's original counterclaim merely serve as examples of his and Specials' documented attempts to court R&M's customers. Additionally, since it filed its original Counterclaim, R&M has uncovered evidence that Manfre, through Specials, in fact improperly solicited and conducted business with numerous R&M customers that were and should have remained R&M customers.  Those customers include, but are not limited to, Schmidt Pritchard & Co.  and DHL/Danzas, as well as ABX, Affiliated Control, American River Logistics, BDG International, DHL Global Forwarding, DSV Sea Air, Expeditors International, HBL/Hellman Worldwide, Leman USA, Palatine Welding, Print Flex, RS Express, and Union Transportation.  These facts have now been specifically incorporated into R&M's Amended Counterclaim.  *See* Amd. Counterclaim at ¶¶. 8, 1, 22, 28, 29, 36 and 38,

Furthermore, Manfre cites no authority for the heightened pleading standard that he purportedly imposes on R&M, which appears similar to that required for pleading a claim of fraud pursuant to FED.R.CIV.P. 9(b).  There is no such heightened pleading standard for alleging a claim of breach of fiduciary duty (*see Sinclair v. Bloom*, 1995 WL 348127, at *8-9 (N.D. Ill. June 8, 1995)), nor is R&M aware of any such authority establishing a heightened pleading standard for usurpation claims.

Finally, Manfre's reliance on *Polansky v. Anderson*, 2005 WL 3557858 (N.D. Ill. Dec. 29, 2005), and *Sain v. Nagel*, 997 F. Supp. 1002 (N.D. Ill. Mar. 11, 1998), is misplaced. In *Polansky*, the plaintiff's claim for breach of fiduciary duty was dismissed for his failure to adequately plead a duty on the part of the defendants; there was never even any discussion as to the sufficiency of the plaintiff's allegation of damages. *See Polansky*, 2005 WL 3557858, at *8-9. Also, in *Sain*, the plaintiff's claims for breach of fiduciary duty were disposed of on a motion for summary judgment, not a motion to dismiss, and the court ruled in the defendants' favor because the plaintiff failed to *prove* injury, not simply plead it. *See Sain*, 997 F. Supp. at 1015-17. Because Manfre's argument as to R&M's allegations of damage lacks any support whatsoever, the Court should deny the Motion to Dismiss.[2]

## II.    R&M's Usurpation Claim Is Not Barred by the ITSA.

Manfre next erroneously contends that R&M's claim for misappropriation of trade secrets in violation of the ITSA (Count III) preempts its claim for usurpation of corporate opportunities (Count II). Manfre incorrectly argues that, because R&M's usurpation claim is allegedly based on Manfre's use of its confidential information in diverting and retaining business from R&M, relief under the ITSA is the exclusive remedy for any such claims. (Doc. 29, at pp. 10-11.) He relies chiefly on *Automed Technologies, Inc. v. Eller*, 160 F. Supp. 2d 915 (N.D. Ill. Jul. 11, 2001), for the proposition that the ITSA abolishes all common law claims which rely on a defendant's use of the plaintiff's confidential information in support. (*Id*.) However, the same opinion explicitly states that "the ITSA only preempts actions predicated on misuse of secret information.  Common law claims based on different theories are still

---

[2]    Again, over the course of limited discovery, R&M has uncovered evidence that Manfre has diverted and retained numerous existing and potential R&M customers, and has reaped revenues in excess of $1,000,0000 as a result.  Nevertheless, such substantial evidence is not required in order for R&M's counterclaims to survive dismissal.

9

permissible." 160 F.Supp.2d at 922. The same court also concluded that a claim for usurpation based on the defendant's abuse of his fiduciary status was not barred by the ITSA. *Id.*

Count II merely includes Manfre's use of confidential information in diverting business away from it and toward Specials as an aggravating factor and not an essential element of its claim for usurpation. (See Doc. 18, at ¶ 29.) R&M's usurpation claim is predicated on Manfre's position of trust with regard to R&M and his fellow shareholders and the conflict that surrounded Manfre in his capacities as a director and owner of both R&M and Specials. Where an alleged breach of duty or usurpation relies mainly on the defendant's fiduciary status as an officer and his failure to tender opportunities in accordance with his fiduciary obligations, and does so in furtherance of his own interests, such a claim is not preempted by the ITSA. *See Thermodyne Food Serv. Prods., Inc. v. McDonald's Corp.*, 940 F. Supp. 1300, 1309 (N.D. Ill. Oct. 1, 1996); *Lucini Italiana Co. v. Grappolini*, 231 F. Supp. 2d 764, 770 (N.D. Ill. Nov. 12, 2002). R&M's usurpation claim is clearly premised on Manfre's misuse of his position of trust as director and shareholder of R&M to further his own interests and those of Specials. Count II states an independent cause of action without relying on Manfre's misappropriation of R&M's trade secrets. Accordingly, the Court should deny Manfre's request to dismiss Count II.

**III.   R&M Adequately States a Cause of Action for Misappropriation of Trade Secrets**

Arguing the merits, Manfre next contends that R&M's counterclaim fails to state a cause of action for misappropriation of trade secrets. Manfre asserts that the information he misappropriated is generally known to the public and that R&M cannot allege that either he or Specials used R&M's trade secret information soliciting R&M customers and quoting prices

specifically designed to compete with R&M.³ (Doc. 29, at pp. 11-13.) Manfre misconstrues the claim alleged and misses the point.

In order to state a claim for misappropriation under the ITSA, R&M must show that: (1) it has confidential information constituting a trade secret; (2) Manfre misappropriated the information; and (3) Manfre used the information for his own business purposes. *Higher Gear Group, Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F.Supp.2d 953, 957 (N.D. Ill. Aug. 19, 2002). In order to qualify as a trade secret, the information that R&M seeks to protect must be information that is sufficiently secret to derive economic value from the fact that it is not generally known to the public and is the subject of reasonable efforts to maintain its confidentiality. 765 ILCS 1065/2(d)(1), (2).

Although R&M publishes its rates and applicable surcharges on its website, neither R&M's finances nor the discounts it makes available to certain volume and repeat customers are published nor generally known. Information concerning R&M's liquidity and the prices and discounts it offers only to certain customers in certain circumstances is the information that R&M takes pains to keep guarded. It is proprietary information that R&M uses to entice and retain repeat business and customer loyalty. Lastly, it is the type of information that Manfre was privy to as a result of his status as a director and shareholder of R&M – and would not otherwise have had access.

R&M is not required to disclose the exact discounts it made available to specific customers in order to plead a claim for misappropriation. Indeed, disclosing a trade secret in detail would deprive the person seeking to protect it of all its value. *See Automed Technologies*, 160 F. Supp. 2d at 920-21. Furthermore, Count III adequately provides Manfre with notice as to the substance of the information he is alleged to have misappropriated, and thus should survive a

---

3    R&M has pled this count against both Manfre and Specials in its Amended Counterclaim.

11

12(b)(6) motion. *See Id.*, at 921, n. 3 (dismissal of trade secret claims for lack of specificity more appropriate at later stages of litigation). Accordingly, R&M has adequately pled the first element of claim for trade secret misappropriation.

Manfre also argues that R&M has failed to properly allege that he has used its trade secret information inappropriately. He contends that R&M's finances and discount pricing information cannot constitute trade secrets, an argument refuted above. Manfre also draws a barely credible distinction between himself and Specials, asserting that it would be impossible for him to use R&M's confidential information for his own business purposes, as Specials is the only entity in a position to use the confidential information to R&M's detriment and reap any benefit from it. As the Court is well aware, Manfre is the sole owner and director of Specials, and held that position at the same time that he was an owner and director of R&M. *See* Doc. 1, ¶ 60. Therefore, Manfre's attempt to distance himself from it and avoid liability under Count III is unavailing.

Additionally, judging from the specific instances in which Specials solicited business from R&M customers and did so quoting rates and surcharges well below those normally charged those same customers by R&M, it can be reasonably be inferred that Manfre took the proprietary information to which he was privy and directed Specials to use it in such a way as to undercut R&M's discounted rates. *See Desmond & Ahern, Ltd. v. Scheffki*, 2001 WL 1646562, at *4 (N.D. Ill. Dec. 21, 2001). Accordingly, the Court should deny Manfre's motion to dismiss Count III.

**IV.    R&M's Claim for Breach of Contract**

Manfre claims R&M's claims should be dismissed because it is properly directed at Specials, not Manfre individually. R&M's Amended Counterclaim cures this alleged defect, and has alleged a Third Party Complaint against Specials in Count IV.

**V.    R&M Has Properly Pled Entitlement to Punitive Damages.**

Manfre lastly contends that R&M's counterclaim fails to properly plead entitlement to punitive damages under any of its claims. R&M has properly pled claims for punitive damages under Counts I and II.

In alleging a claim for punitive damages, a complainant has the burden of showing a reasonable basis for such an award. In that regard, courts have consistently held that allegations that the defendant acted fraudulently, with actual malice, or with wanton disregard for the interests of others will generally suffice. *See Worthem v. Gillette Co.*, 774 F.Supp. 514, 517 (N.D. Ill. Oct. 2, 1991). Further, Illinois courts have universally held that punitive damages are appropriate where a defendant is alleged to have intentionally breached his fiduciary duty, particularly where he has occupied a position of trust and confidence. *Dowd & Dowd, Ltd. v. Gleason*, 352 Ill.App.3d 365, 387-88, 816 N.E.2d 754, 773 (2004); *Caparos v. Morton*, 364 Ill.App.3d 159, 178, 845 N.E.2d 773, 789 (2006). R&M has exhaustively alleged that Manfre abused his position of trust as a fiduciary to R&M and his fellow directors and shareholders in ways that benefited Manfre and Specials to R&M's detriment, and did so in bad faith and with actual malice. (*See* Doc. 18, at ¶¶ 14, 15, 18, 19, 23, 26, 29, 31.) Accordingly, Counts I and II sufficiently allege claims for punitive damages.

## **CONCLUSION**

For the foregoing reasons, Defendant/Counter-Plaintiff R&M Freight, Inc. respectfully requests that this Court enter an Order denying Plaintiff/Counter-Defendant Thomas Manfre's Motion to Dismiss in its entirety.

Dated: September 9, 2008                               Respectfully submitted,

                                                       R&M FREIGHT, INC.

                                                       By: s/ Andrew Bleiman
                                                       One of its attorneys

Fredric A. Cohen
Andrew P. Bleiman
CHENG COHEN LLC
1101 W. Fulton Market, Suite 200
Chicago, Illinois 60607
(312) 243-1717
fredric.cohen@chengcohen.com
andrew.bleiman@chengcohen.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed served via the CM/ECF system on September 9, 2008, on all counsel of record:

s/ Andrew Bleiman
Andrew P. Bleiman
